565 P.2d 1033

SAFECO INSURANCE COMPANY OF AMERICA, INC., Plaintiff-Appellant,

v.

Bernard J. McKENNA and Richard E. McKenna, Defendants-Appellees,

and

Robert Ortiz, Intervenor-Appellee.

No. 11102.

Supreme Court of New Mexico.

July 1, 1977.

Rehearing Denied Aug. 2, 1977.

Gallagher, Casados & Patten, David R. Gallagher, Albuquerque, Shaffer, Butt, Jones & Thornton, J. Duke Thornton, Albuquerque, for plaintiff-appellant.

Bradford H. Zeikus, Albuquerque, for defendants-appellees.

Thomas D. Schall, Albuquerque, for intervenor-appellee.

## OPINION

EASLEY, Justice.

Bernard McKenna (McKenna) had a homeowner's insurance policy with Safeco Insurance Company of America (Safeco). McKenna's son, Richard, was a minor and a member of his father's household. Robert Ortiz (Ortiz) filed a civil action in assault and battery for damages sustained in a fight with Richard, alleging intentional misconduct by Richard and also the negligence of McKenna in failing to exercise discipline and control over Richard, allegedly of known vicious proclivities. Both McKenna and Richard were made defendants.

Safeco sought a declaratory judgment in the District Court of Bernalillo County as to its liability and collateral obligation to defend McKenna and Richard. That court declared that, under the terms of the public liability provisions of the policy, Richard was "an insured," but that he was not "the insured" mentioned by the exclusionary clause of the policy pertaining to intentional torts, and accordingly concluded that Safeco was obligated to defend both McKenna and Richard and pay all damages awarded. The court also awarded $3,000.00 in attorney's fees to McKenna and Richard for defending the declaratory judgment action.

Safeco appealed the decision of the trial court, challenging both the award of attorney's fees and its obligation to defend Richard or pay any judgment against him, claiming error in the trial court's determination that the exclusionary clause did not apply to Richard. Safeco does not contest its obligation to defend or indemnify McKenna.

With regard to the issues before us the cases from other jurisdictions reflect that the terms of homeowners' liability policies are materially the same throughout the country. Pertinent portions of the Safeco policy are set forth in which the company agreed:

> *To Pay* on behalf of *the insured* all sums which the *insured* shall become obligated to pay . . . To Pay, if requested by the *named insured* . . . the reasonable expense of necessary medical, surgical and dental services, [etc.] . . . *Defend* any suit against *the insured* . . . *Pay* . . . all costs taxed against *the insured* . . . *Pay* expenses incurred by *the insured* . . . *Reimburse the insured* for all reasonable expenses . . .
>
> c. *Definitions* 1. *"Insured"* the *unqualified* word "insured" includes (a) the *named insured* and if residents of the household, *his* spouse, and *relatives* . . . (b) with respect to animals and watercraft owned by *an insured,* any person or organization legally responsible therefor and (c) with respect to farm tractors and trailers and self-propelled or motor or animal drawn farm implements, any employee of *an insured* while engaged in the employment of *the insured* and (d) in the event of the death of the *named insured* within the policy period unless the policy is cancelled, (1) the *named insured's* legal representative as the named insured but only with respect to the premises of the original *named insured* and those of his spouse, and (2) while a resident of said premises, any person who was *an insured* prior to the death.

2. *Exclusions* This Section does not apply: . . . c. to injury, sickness, disease, death or destruction caused intentionally by or at the direction of *the insured;* (Emphasis added.)

Only one page of the printed policy was placed in evidence, but there were many more instances on that page where the term "the insured" was employed to include both the named insured and the additional insureds. The policy provided that the "unqualified word 'insured' " meant the named insured and the additional insureds. However, the only times in the policy where the term "insured" was preceded by a definitive qualifying word was when the term "*named* insured" was used.

It is unquestioned that Richard intentionally inflicted injuries upon Ortiz and that Richard was an additional insured under the policy. The parties recognize that the controversy turns upon the legal construction of the exclusionary clause. The sole question is whether this intentional-tort exclusion was limited to McKenna, the "named insured," or applied as well to Richard, one of the additional insureds.

The McKennas argue that the exclusion does not apply to Richard and that the company is bound to defend him and pay any damages for the reason that he is not "the insured" mentioned in the exclusionary clause, that term being synonymous with "named insured," i. e., McKenna. Safeco maintains that the exclusionary clause applies to the intentional conduct of Richard as it would apply to like actions of McKenna, and that the phrase "the insured" is to be interpreted to mean the additional insureds as well as McKenna.

This court has held that exclusionary definitions in an insurance contract are to be enforced so long as their meanings are clear and they do not conflict with the statutory law. *Willey v. Farmers Insurance Group,* 86 N.M. 325, 523 P.2d 1351 (1974). However, the specific question involved here has not heretofore arisen on appeal in our courts. We recognize that there is a minority view to the contrary but nevertheless adopt the reasoning and holdings in *National Union Fire Insurance Company v. Bourn,* 441 S.W.2d 592 (Tex.Civ. App.1969) and *Kipp v. Hurdle,* 307 So.2d 125 (La.App.1974).

In *Bourn,* four young men deliberately and in concert intentionally committed an assault. The court held that, under an insurance policy clause with nearly the identical language as is under review here, the policy provision clearly and effectively excluded coverage for such intentional acts of an additional insured and held that the clause was valid.

In *Kipp,* the facts showed that Mrs. Hurdle, while driving by the Crocodile Inn looking for her husband, came upon his parked vehicle. She entered the lounge "in a rage and barefooted." Mr. Hurdle was dancing with Mrs. Kipp and Mrs. Hurdle "walked over to the rear of her husband, grabbed his arm, spun him around and slapped his face." Then she "grabbed the plaintiff by the hair of the head and shoved her to the floor." Mrs. Kipp was injured and sued Mr. and Mrs. Hurdle.

The clause in the homeowner's policy at issue in *Kipp* was materially the same as the one in our case. The court stated [307 So.2d at 129]:

We are unable to agree with the trial court that there exists any ambiguity whatever in this policy. The policy plainly, simply and unequivocally states that it does not cover personal liability arising from a bodily injury either expected or intended by the insured. There is complete clarity in defining the person designated as the insured. Mrs. Hurdle, as the spouse living in the household of the named insured is an "insured" within the terms of the policy.

The trial court in the instant case erroneously characterized the clause which defined the additional insureds as the "omnibus clause." In *Kipp,* the court explained the difference between the two types of policy [307 So.2d at 129]:

It is clear that this policy, by its terms, does not cover vicarious liability as such. There is no "omnibus clause" and there

are no "omnibus insureds" under the policy issued to Hurdle. These terms are used in discussing liability arising ordinarily from the use of a motor vehicle with the permission of the named insured, or vicarious liability imposed on some other person or organization because of fault of the named insured or a driver operating the vehicle with permission of named insured. Such has no application to the type policy consideration herein.

▌ The parties to an insurance contract may validly agree to extend or limit insurance liability risks as they see fit. *Pendergraft v. Commercial Standard Fire & Marine Co.,* 342 F.2d 427 (10th Cir. 1965). It has been held that a provision in a policy excluding coverage for intentional injuries is designed to prevent indemnifying one against loss from his own wrongful acts. *Pendergraft; Arenson v. National Automobile & Casualty Ins. Co.,* 45 Cal.2d 81, 286 P.2d 816 (1955). The rule is expressed in 11 Couch on Insurance 2d § 44:272 (1963) as follows:

By express policy limitation or judicial construction, it is held that a public liability policy only protects against liability on the ground of negligence; that is, the insured is not protected from the consequences of his own wilful and intentional wrongs, nor against the wilful and intentional wrongs of his agent, committed with the intent to inflict injury   .  . .

Other jurisdictions have held that the additional insureds are excluded from claiming indemnity from the insurers by similar exclusionary clauses. *Oakes v. State Farm Fire & Casualty Company,* 137 N.J.Super. 365, 349 A.2d 102 (1975); see also *Pawtucket Mutual Insurance Company v. Lebrecht,* 104 N.H. 465, 190 A.2d 420, 423 (1963). In *Pawtucket,* the fact situation and the policy terms were practically identical with those in the instant case. However, the minor son who inflicted the injuries was not a party to the suit. The court held that under those circumstances the father and mother would be covered under the policy against liability for the intentional injury committed not by them but by their minor son who was insured as an additional party but stated that the son "would be excluded from coverage as the insured under exclusion clause 'c'." That court in considering the terms used in the policy stated [104 N.H. at 468, 190 A.2d at 422–423]:

It is reasonable to assume that when the company used the definite expression "the Insured" in certain provisions of the policy and the more indefinite or general expression "any Insured" or "an Insured" in other provisions, it intended to cover differing situations which might come within the terms of the policy. (Citations omitted.) We are of the opinion that the provisions excluding from liability coverage injuries intentionally caused by "the Insured" was meant to refer to a definite, specific insured, namely the insured who is involved in the occurrence which caused the injury and who is seeking coverage under the policy.

In our case, unlike *Pawtucket,* the minor son was made a party defendant and is seeking coverage under the policy.

In *Walker v. Lumbermens Mutual Casualty Company,* 491 S.W.2d 696 (Tex.Civ. App.1973) the court faced a situation similar to that present in *Arenson* where the father of the minor who committed the tortious act was suing his insurance company for indemnity without joining his son as a party. The court disagreed that *Arenson* was in conflict with *National Union Fire Company v. Bourn,* supra, stating that in *Bourn* the court had correctly held that an *additional* insured who intentionally caused damage was precluded from recovering by the exclusion clause, stating [491 S.W.2d at 699]:

The important distinction between *Bourn* and *Arenson,* is that in *Bourn* claim was made through an insured who committed an intentional wrong. Exclusion No. 5 was applicable. In *Arenson,* and in the instant case claim was made by an insured who is legally responsible for property damage he did not intentionally commit.

**520**

In *Walker,* the court held that the exclusionary clause did not apply to the father who was not the party who intentionally committed the tortious act. That case is distinguishable from ours.

■ Under New Mexico law the obligation of a liability insuror is contractual and is to be determined by the terms of the policy. *Willey v. Farmers Insurance Group, supra; Jones v. Harper,* 75 N.M. 557, 408 P.2d 56 (1965); *Wolff v. General Casualty Company of America,* 68 N.M. 292, 361 P.2d 330 (1961). The clauses in the policy must be construed as intended to be a complete and harmonious instrument designed to accomplish a reasonable end. *Erwin v. United Benefit Life Insurance Company,* 70 N.M. 138, 371 P.2d 791 (1962).

■ Unambiguous insurance contracts must be construed in their usual and ordinary sense unless the language of the policy requires something different. *Wesco Insurance Company v. Velasquez,* 88 N.M. 273, 540 P.2d 203 (1975); *Couey v. National Benefit Life Insurance Company,* 77 N.M. 512, 424 P.2d 793 (1967); *Harris v. Quinones,* 507 F.2d 533 (10th Cir. 1974).

■ If an ambiguity is found in the language of an insurance contract, then it should be construed liberally in favor of the insured. *Erwin v. United Beneficial Life Insurance Company,* supra. However, the rule requiring construction of insurance contracts favorably to an insured applies only where the language in the policy is ambiguous. *Foundation Reserve Insurance Co. v. McCarthy,* 77 N.M. 118, 419 P.2d 963 (1966). Resort will not be made to a strained construction for the purpose of creating an ambiguity when no ambiguity in fact exists. *Cain v. National Old Line Insurance Company,* 85 N.M. 697, 516 P.2d 668 (1973); *Miller v. Mutual Benefit Health and Acc. Ass'n of Omaha,* 76 N.M. 455, 415 P.2d 841, 19 A.L.R. 3d 1421 (1966).

■ The term "the insured" was used in numerous places in the Safeco policy to include not only the "named insured" but the additional insureds as well. There is nothing unreasonable or illogical about reading the words "the insured" in the exclusionary clause to mean that none of the insureds that commits an intentional tort can claim indemnity from Safeco or is entitled to representation by the insurer when sued. Construing the words in their usual and ordinary sense the words are complete and harmonious and appear to be designed to accomplish a reasonable end. Holding that the term "the insured" in the exclusionary clause actually means "named insured" would constitute a strained construction and create an ambiguity when no ambiguity in fact exists.

We hold that the language in the policy is clear and unambiguous and that Richard should be denied indemnity against Safeco for damages and attorney's fees. We reverse the district court on the issues of liability and attorney's fees and order judgment entered for Safeco.

IT IS SO ORDERED.

McMANUS, C. J., and PHILLIP D. BAIAMONTE, District Judge, concur.