FARMERS ALLIANCE MUTUAL
INSURANCE COMPANY,
Plaintiff-Appellee,

v.

Mary BAKKE, Johnny Bakke, Jo Lynn Wood, Karla Vigil and Lawrence Vigil,
Defendants-Appellants.

No. 79–1981.

United States Court of Appeals,
Tenth Circuit.

Submitted Feb. 14, 1980.

Decided April 30, 1980.

Stephen M. Williams of Shaffer, Butt, Thornton & Baehr, P. C., Albuquerque, N. M., for plaintiff-appellee.

Paul S. Cronin of Duhigg & Cronin, Albuquerque, N. M., for defendants-appellants Mary Bakke and Johnny Bakke.

Mark Klecan of Klecan & Roach, P. A., Albuquerque, N. M., for defendants-appellants Karla Vigil and Lawrence Vigil.

Before BARRETT, DOYLE and McKAY, Circuit Judges.

BARRETT, Circuit Judge.

After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See:* Fed.R. App.P. 34(a); Tenth Circuit R. 10(e). The cause is therefore ordered submitted without oral argument.

Mary Bakke, Johnny Bakke, Jo Lynn Wood, Karla Vigil, and Lawrence Vigil (appellants) appeal from summary judgment granted to Farmers Alliance Mutual Insurance Company (Farmers) in an action commenced pursuant to the Federal Declaratory Judgments Act, 28 U.S.C. §§ 2201–2202.

The facts are not in dispute. Farmers issued an insurance policy to Mary Bakke covering a 1973 Honda CL 350 motorcycle for the period November 18, 1975 through November 18, 1976. On February 26, 1976, during the policy period, Jo Lynn Wood sustained personal injuries resulting from an intersection collision between the insured motorcycle, on which she was a passenger, and an automobile driven by Karla Vigil, and owned by Lawrence Vigil.

Wood filed an action in state court against the Vigils alleging that Karla Vigil's negligent operation of the automobile caused the accident. The Vigils answered, and set up a third-party complaint for indemnity and/or contribution against Johnny A. Bakke. The third-party complaint

alleged that Johnny A. Bakke was the driver of the motorcycle involved in the collision; Johnny Bakke's negligent operation of the motorcycle proximately caused injuries to Jo Lynn Wood; and, as a result thereof, the Vigils were entitled to indemnity and/or contribution for any damages awarded Wood on her complaint.

Following service of the third-party complaint, Farmers [the insuror of Mary Bakke, Johnny's mother] filed this action for declaratory relief seeking a judgment that it need not indemnify or defend Johnny A. Bakke as to any claims arising out of the February 26, 1976 accident in which Wood was injured.

On an agreed statement of facts, Farmers filed a motion for summary judgment relying on the following provisions of the insurance contract issued to Mary Bakke:

Coverage A—Bodily Injury Liability; Coverage B—Property Damage Liability. To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of:

A. bodily injury, sickness or disease, including death resulting therefrom, hereinafter called "bodily injury," sustained by any person;

B. injury to or destruction of property, including loss of use thereof, hereinafter called "property damage";

caused by accident and arising out of the ownership, maintenance or use of the owned motorcycle and the company shall defend any suit alleging such bodily injury or property damage and seeking damages which are payable under the terms of this policy, even if any of the allegations of the suit are groundless, false or fraudulent; . . .

\* \* \* \* \* \*

Persons Insured.

(a) with respect to the insurance for bodily injury liability and for property damage liability, the unqualified word "insured" includes the named insured and if the named insured is an individual, his spouse if a resident of the same household, and

(b) any other person using or legally responsible for the use of an insured vehicle covered by this policy with the permission of the named insured, only if such other person (1) has no liability insurance of his (her) own, either primary or excess, or (2) is not included in "Persons Insured" or "Definitions of Insured" in any other liability insurance policy, either primary or excess.

\* \* \* \* \* \*

Exclusions. This policy does not apply under Part 1:

\* \* \* \* \* \*

(c) to bodily injury to any person while on or getting on or alighting from the insured vehicle;

[R., Vol. I, p. 5].

Appellants vigorously contested Farmers' motion for summary judgment contending that: (1) the exclusionary provisions quoted do not apply under the factual situation presented; (2) exclusion of passengers under the insuring agreement is repugnant to the public policy of the State of New Mexico; and (3) enforcement of the exclusionary provisions triggers uninsured motorist coverage under the insuring agreement and the statutes of the State of New Mexico.

Following extensive briefing by the parties, the District Court ruled:

The policy states in large red capital type on the declaration page that it does not apply to bodily injury to riders and in the Exclusion (c) that the policy does not apply to bodily injury to any person while on or getting on or alighting from the insured vehicle. Inasmuch as the allegation of the complaint and the third-party complaint show clearly that Jo Lynn Wood was a passenger on the motorcycle and as such specifically exempted from coverage by the policy there is no duty to defend on the part of the plaintiff there being no assertion of a claim within the terms of the policy.

There is some contention raised by defendants of applicability of the New Mexico Financial Responsibility Act which I find are not tenable.

888

Therefore, summary judgment is granted to the plaintiffs. [R., Vol. I, p. 49].

Thus, the sole issue on appeal is whether the District Court erred in granting summary judgment to Farmers Alliance Mutual Insurance Company.

### Exclusionary Provisions

It is axiomatic that the substantive law of the State of New Mexico applies with respect to the issues involved in this federal declaratory relief action predicated upon complete diversity of citizenship, and requisite amount in controversy. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Farmers Insurance Co., Inc. v. McClain*, 603 F.2d 821 (10th Cir. 1979). Unfortunately, the New Mexico Supreme Court has not ruled on the issues presented. Accordingly, our decision on the substantive law issues presented must be predicated on our interpretation of how the Supreme Court of New Mexico would construe the law if faced with similar facts and issues. *City of Aurora, Colorado v. Bechtel Corp.*, 599 F.2d 382 (10th Cir. 1979). This requires us to consider all resources available, including decisions of other states, New Mexico and federal decisions, and the general weight and trend of authority. *Burgert v. Tietjens*, 499 F.2d 1 (10th Cir. 1974). The resident District Court's views on this question of New Mexico law, of course, carry extraordinary force on this appeal because there are no controlling state decisions providing clear precedent. *Rasmussen Drilling, Inc. v. Kerr-McGee Nuclear Corp.*, 571 F.2d 1144 (10th Cir. 1978), *cert. denied*, 439 U.S. 862, 99 S.Ct. 183, 58 L.Ed.2d 171 (1978).

In New Mexico, the "obligation of a liability insuror is contractual and is to be determined by the terms of the policy". *Safeco Insurance Co. of America, Inc. v. McKenna*, 90 N.M. 516, 565 P.2d 1033, 1037 (1977). The insuring agreement must be construed to effect the intent of the parties. *Cain v. National Old Line Insurance Co.*, 85 N.M. 697, 516 P.2d 668 (1973). Whenever possible, "the meaning of the contract must be ascertained from a consideration of the written policy itself. Extrinsic evidence is not admissible to determine the intent of the parties unless there is an uncertainty and ambiguity in the contract." *Atlas Assurance Co., Lt'd. v. General Builders, Inc.*, 93 N.M. 398, 600 P.2d 850, 852 (1979).

Exclusionary provisions in insuring agreements are enforceable so long as their meaning is clear and they do not conflict "with the express language of a statute [or] . . . with the legislative intent, absent explicit statutory expression." *Chavez v. State Farm Mutual Automobile Insurance Co.*, 87 N.M. 327, 533 P.2d 100, 102 (1975). If an ambiguity appears, however, its construction should be resolved in favor of the insured. *Mountain States Mutual Casualty Co. v. Northeastern New Mexico Fair Assoc.*, 84 N.M. 779, 508 P.2d 588 (1973). Thus, ambiguities in coverage are construed to afford coverage, *Read v. Western Farm Bureau Mutual Insurance Co.*, 90 N.M. 369, 563 P.2d 1162 (1977), while unclear exclusionary provisions are construed narrowly so as to avoid non-coverage. *King v. Travelers Insurance Co.*, 84 N.M. 550, 505 P.2d 1226 (1973).

The "Declarations" page of the insuring agreement provides in large, visible red-type "THIS POLICY DOES NOT APPLY TO BODILY INJURY TO RIDERS." [R., Vol. I, p. 4]. The insuring agreement itself excludes "bodily injury to any person while on or getting on or alighting from the insured vehicle." [R., Vol. I, p. 5]. The exclusionary provisions are clear and unambiguous. Moreover, they are highly visible and calculated to afford adequate notice to any purchaser. Inasmuch as it is uncontested that Jo Lynn Wood was a passenger on the Bakke vehicle, the exclusionary provisions apply. Based upon our consideration of the provisions contained in the four corners of the contract, we hold that Farmers has no duty to defend or indemnify Mary Bakke or Johnny A. Bakke in any action seeking damages as a result of the subject collision. This court "will not make a contract of insurance, but will only enforce the

intent of the parties as manifested by the writing." *Horn v. Lawyers Title Insurance Corp.*, 89 N.M. 709, 557 P.2d 206, 208 (1976).

### Public Policy Considerations

In determining whether the exclusionary clause is repugnant to the public policy of the State of New Mexico, we must determine whether its application would conflict with either the express language of a statute, or the legislative intent of a particular statutory scheme. *Chavez v. State Farm Mutual Automobile Insurance Co., supra*, 533 P.2d at 102. Appellants urge us to declare the exclusion void and unenforceable based on its conflict with the public policy underlying the enactment of the New Mexico Financial Responsibility Act, N.M. Stat.Ann. §§ 66–5–201, *et seq.* (1978 Comp.), and the public policy rationales employed by the Supreme Court of New Mexico in its decision holding the New Mexico guest statute [N.M.Stat.Ann. § 64–24–1 (1953 Comp.)] unconstitutional. *McGeehan v. Bunch*, 88 N.M. 308, 540 P.2d 238 (1975).

We first discuss the contentions surrounding the applicability and public policy announced in the enactment of the New Mexico Financial Responsibility Act. The Act, by its own terms, applies only to individuals "who have been convicted of or forfeited bail for certain offenses under motor vehicle laws or who have failed to pay judgments or written settlement agreements upon causes of aciton [action] arising out of ownership, maintenance or use of vehicles of a type subject to registration under the laws of this state."[1] N.M.Stat. Ann. § 66–5–205 (1978 Comp.).

Here, it is admitted that the policy in question was not "certified or filed as proof of financial responsibility under the New Mexico Financial Responsibility Act by or on behalf of either Mary Bakke or Johnny Bakke." [R., Supp. Vol. I, p. 3]. The singular fact that the insuring agreement contains a "conformity clause" to the effect that when it is certified as proof of finan-cial responsibility, the requirements of the Financial Responsibility Act are incorporated into the terms of the policy is of no moment here. In *Larson v. Occidental Fire and Casualty Co.*, 79 N.M. 562, 446 P.2d 210 (1968) the Supreme Court stated:

New Mexico has no general statutory provision making insurance compulsory in all cases. The statute in force at the time of this accident pertaining to proof of financial responsibility for the future, ch. 182, Laws 1955, applied only to drivers who had had prior accidents and who would otherwise have been prohibited from continuing to operate a motor vehicle. *Farmers Ins. Exchange v. Ledesma*, 214 F.2d 495 (10th Cir. 1954) (construing predecessor provisions). A policy covering insurance for the future pursuant to this act constituted proof of a driver's future financial responsibility necessary to his continued operation of a vehicle. *The owner or person covered by the policy must have been brought within the scope of the statute by prior accident before its provisions applied.* [Citations omitted] Section 8 of the policy in question, providing: "When this policy is certified as proof of financial responsibility for the future under the provisions of the motor vehicle responsibility law \* \*," extends the coverage under the financial responsibility provisions of the statute only after the driver has been involved in an accident for which he was unable to respond in damages. *Since no prior accident was alleged, the financial responsibility provisions did not become effective and the territorial limitation contained in the policy controls.*

[79 N.M. 562, 446 P.2d 210 at p. 211] [Emphasis supplied].

■ By limiting the application of the Financial Responsibility Act to a certain class of persons, in our view the legislature made a conscious choice to subject the specific insuring provisions contained therein only to that class of persons. In other

---

1. There is no suggestion that the Bakkes fall within the terms of the New Mexico Financial Responsibility Act.

words, insurance companies and their clients are free to contract at arm's length without regard to provisions contained in the New Mexico Financial Responsibility Act, so long as it does not apply to them and no other express public policy considerations are involved.

The vast majority of cases support this view. *Mooradian v. Canal Ins. Co.*, 272 Ala. 373, 130 So.2d 915 (1961); *Aetna Casualty & Surety Co. v. Simpson*, 228 Ark. 157, 306 S.W.2d 117 (1957); *American Service Mutual Ins. Co. v. Parviz*, 153 Colo. 490, 386 P.2d 982 (1963); *Bankers & Shippers Ins. Co. v. Phoenix Assur. Co.*, 210 So.2d 715 (Fla. 1968); *McCann v. Continental Casualty Co.*, 6 Ill.App.2d 527, 128 N.E.2d 624 (1955), *aff'd* 8 Ill.2d 476, 134 N.E.2d 302 (1956); *Green v. State Farm Mutual Auto Ins. Co.*, 343 N.E.2d 828 (Ind.App.1976); *Western Casualty & Surety Co. v. General Casualty Co.*, 200 N.W.2d 892 (Iowa 1972); *Miller v. State Farm Mutual Auto Ins. Co.*, 204 Kan. 694, 466 P.2d 336 (1970); *Travelers Ins. Co. v. Boyd*, 312 Ky. 527, 228 S.W.2d 421 (1949); *Johnson v. Universal Auto Ins. Assn.*, 124 So.2d 580 (La.App.1960); *State Auto Ins. Assn. v. Kooiman*, 143 F.Supp. 614 (D.S.D. 1956) (Minnesota and South Dakota statutes); *State Farm Mutual Auto Ins. Co. v. Ward*, 340 S.W.2d 635 (Mo.1960), *but see Winterton v. Van Zandt*, 351 S.W.2d 696 (Mo.1961); *Lewis v. Mid-Century Ins. Co.*, 152 Mont. 328, 449 P.2d 679 (1968); *Reserve Ins. Co. v. Aguilera*, 181 Neb. 605, 150 N.W.2d 114, 24 A.L.R.3d 431 (1967); *American Mutual Liability Ins. Co. v. Ocean Accidental Guarantee Corp.*, 87 N.H. 374, 180 A. 249 (1935); *Rasinski v. Metropolitan Casualty Ins. Co.*, 117 N.J.L. 490, 189 A. 373 (1937); *Letson v. Sun Indemnity Co.*, 147 Misc. 690, 264 N.Y.S. 519 (1933), *aff'd* 241 App.Div. 629, 269 N.Y.S. 965 (1934), *Moyer v. Aron*, 175 Ohio St. 490, 196 N.E.2d 454 (1964); *United States Fidelity & Guaranty*

*Co. v. Walker*, 329 P.2d 852 (Okl.1958); *State Farm Mutual Auto Ins. Co. v. Cooper*, 233 F.2d 500 (4th Cir. 1956) (South Carolina statute); *United States Casualty Co. v. Brock*, 345 S.W.2d 461 (Tex.Civ.App.1961) *writ ref.; Holt v. State Farm Mutual Auto Ins. Co.*, 486 S.W.2d 734 (Tenn.1972); *State Farm Mutual Auto Ins. Co. v. Arghyris*, 189 Va. 913, 55 S.E.2d 16 (1949); *Royse v. Boldt*, 80 Wash.2d 44, 491 P.2d 644 (1971); *Havlik v. Bittner*, 272 Wis. 71, 74 N.W.2d 798 (1956). Also noteworthy is an extensive annotation which is reported in 8 A.L.R.3d 388 (1966).

To date apparently only two jurisdictions, Arizona and California, have ruled that voluntary insurance policies must conform to the state's financial responsibility laws as a matter of public policy, even where the financial responsibility law does not apply. *Jenkins v. Mayflower Ins. Exchange*, 93 Ariz. 287, 380 P.2d 145 (1963); *Globe Indemnity Co. v. Universal Underwriters Ins. Co.*, 201 Cal.App.2d 9, 20 Cal.Rptr. 73 (1962).

■ We hold that the exclusion in question is not repugnant to the provisions of the New Mexico Financial Responsibility Act, specifically N.M.Stat.Ann. § 66–5–230(B)(2) (1978 Comp.), in that the policy here involved was not certified as evidence of financial responsibility under the Act.[2] *Accord: Ennis v. Charter*, 290 So.2d 96 (Fla. App.1974); *See generally:* Appleman, Insurance Law and Practice (Buckley ed.), § 4412 (1979).

Having held that the exclusion in question is not repugnant to the provisions of the New Mexico Financial Responsibility Act, we now consider its viability in light of the New Mexico Supreme Court's decision in *McGeehan v. Bunch, supra*. In *McGeehan*, the Court held that the classifications created by the guest statute, as between

---

**2.** We may well have been forced to reach a different conclusion had this policy been certified as evidence of financial responsibility under the New Mexico Motor Vehicle Financial Responsibility law. *See: Makris v. State Farm Mut. Auto. Ins. Co.*, 267 So.2d 105 (Fla.App. 1972); *Hibdon v. Cas. Corp. of America, Inc.*, 504 P.2d 878 (Okl.App.1972). Similarly, we do

not decide whether the exclusion would be valid in view of the New Mexico uninsured motorist provisions, N.M.Stat.Ann. § 66–5–301 (1978 Comp.), if applied to the named insured involved in an accident with an uninsured motorist. *Chavez v. State Farm Mut. Auto. Ins. Co., supra.*

those passengers who are denied and those who are permitted recovery against an operator of a vehicle in which they are riding for negligently inflicted injuries, do not bear a rational relationship to the legislative purposes underlying the enactment of the guest statute. In so holding, the opinion placed strong emphasis on the development of widespread availability of insurance to owners and operators of motor vehicles. In particular, the Court stated:

The other line of reasoning supporting the hospitality rationale is that to sue one's host for negligence is the epitome of ingratitude. If the doctrine of preventing the ungrateful act of a negligence lawsuit against a hospitable host ever had any rational basis, it has been worn away by changing circumstances. When our guest statute was passed in 1935, it was evidently considered inequitable to place the burden of negligently caused injury of nonpaying guests upon the individual host. Today, this burden would in most cases no longer fall upon the hospitable host, but on his insurance company and in turn on the general motoring public. Liability insurance is widespread throughout the State. The trend today is to require mandatory public liability insurance coverage for all owners of motor vehicles. The Financial Responsibility Act, § 64–24–42 et seq., N.M.S.A.1953 (2d Repl. Vol. 9, Pt. 2, 1972), also establishes a policy for protection of the public involved in motor vehicle accidents. A classification that may once have had a fair and substantial relation to the objectives of the statute because of an existing factual setting, may lose its relationship due to altered circumstances.

\*  \*  \*  \*  \*  \*

"The *Brown* [*v. Merlo*, 8 Cal.3d 855, 106 Cal.Rptr. 388, 506 P.2d 212] Court recognized that 'a classification which once was rational because of a given set of circumstances may lose its rationality if the relevant factual premise is totally altered.' The 'protection of hospitality' rationale was held to provide an insufficient basis for the guest statute's classifi-

cation. Citing the fact that nearly 85 percent of automobile drivers carry liability insurance, the court found that there is no such being as an ungrateful guest. '[T]here is simply no notion of "ingratitude" in suing your host's *insuror.*' "
[88 N.M. 308, 540 P.2d 238 at p. 241–242, *quoting in part,* Comment, Review of the Past, Preview of the Future: The Viability of Automobile Guest Statutes, 42 U.Cin.L.Rev. 709 (1973)].

Based on this language, the appellants urge that allowing an exclusion, such as that involved in this case, would in effect undercut the Supreme Court's rationale in declaring the guest statute unconstitutional in view of changed circumstances. *See: McGeehan v. Bunch, supra,* 540 P.2d at pp. 245–246 (Oman, J., dissenting). Appellants' argument does have merit. It is our view, however, that where the State of New Mexico, through its legislature, has specifically adopted a motorist protection statute—the New Mexico Financial Responsibility Act,—and has failed to make the provisions of that Act applicable to all classes of operators, it has made a conscious choice, as a matter of public policy, to allow insureds and their insurors to contract in any manner they wish so long as it is not repugnant to express legislative enactment or its underlying intent. Here the intent of the legislature, as we view it, was to mandate insuring provisions only for those persons who come within the purview of the Financial Responsibility Act.

 \* \* \* the public policy of a state is for the legislature whose judgment as to the wisdom, expediency or necessity of any given law is conclusive on the courts unless the declared public policy runs counter to some specific constitutional objection.
*Village of Deming v. Hosdreg Co., Inc.,* 62 N.M. 18, 303 P.2d 920, 930 (N.M.1956).

The strong arguments and reasons advanced by appellants should, we suggest, be directed to the New Mexico legislature rather than the courts. In any event, we adhere to our long standing rule that where the resident federal district court deter-

mines what New Mexico law is, in the absence of controlling state court authority, we shall accept such a conclusion, unless it is clearly erroneous. *Chafin v. Aetna Insurance Co.*, 550 F.2d 575 (10th Cir. 1976).

We hold that the exclusion employed in the insuring agreement before us is valid only because the policy was not certified as evidence of financial responsibility, and, as such, did not come under the provisions of the New Mexico Financial Responsibility Act.

### *Uninsured Motorist Claims*

■ Certain of the appellants also argue that the "uninsured motorist provisions of this policy come into play if the exclusionary clause in a liability policy is held valid." [Brief of appellants Vigil at p. 9]. In our view, the uninsured motorist provisions here were designed as first-party insurance, rather than third-party insurance. Accordingly, Jo Lynn Wood, as a third-party, cannot claim against the Bakkes' uninsured motorist coverage.

The avowed purpose of the [uninsured motorist] statute is to encourage self-protection against the financially irresponsible motorist through *voluntary insurance*. To make this realistically possible, it requires liability insurance companies to offer their clients this protection in at least the minimum amounts established by the financial responsibility law. The policy required under the financial responsibility law is for the protection of the public generally, while uninsured motorist insurance is for individuals who have the foresight to protect themselves against a financially irresponsible motorist. The statute was clearly designed to enable the purchaser of the latter type of insurance to assure himself and members of his household of not less than the minimum protection provided for the general public in the financial responsibility law. The uninsured motorist policy is personal to the insured. This is what he bargained for, and one which he was encouraged to purchase by the legislature.

*Palisbo v. Hawaii Insurance and Guaranty Co., Ltd.*, 57 Haw. 10, 547 P.2d 1350, 1354 (1976).

WE AFFIRM.