**Flora SENA, as next friend of Lee
Sena, a minor, Plaintiff,**

v.

**TRAVELERS INSURANCE
COMPANY, Defendant.**

**No. 91–1075–M Civil.**

United States District Court,
D. New Mexico.

June 11, 1992.

**472**

Narciso Garcia, Jr., Garcia Law Offices, Albuquerque, N.M., for plaintiff.

P. Scott Eaton, Keleher & McLeod, Albuquerque, N.M., for defendant.

## MEMORANDUM OPINION AND ORDER

MECHEM, Senior District Judge.

This matter came on for consideration on the motion for summary judgment brought by defendant Travelers Insurance Company (hereinafter "Travelers"). Having considered the motion, response, and reply, and being otherwise fully advised in the premises, I find that defendant's motion is well taken and is hereby granted. Plaintiff's complaint against insured Edward Urioste does not allege facts tending to show an occurrence covered by Mr. Urioste's policy with Travelers. I find no triable fact issues as to breach of contract, breach of the covenant of good faith and fair dealing, or violation of the New Mexico Insurance Code. Travelers' refusal to defend plaintiff's suit against Mr. Urioste was reasonable and in good faith. Summary judgment is appropriate here.

## BACKGROUND

Travelers is a Connecticut corporation with its principal place of business in Connecticut. In 1988, a subsidiary of Travelers, also a Connecticut corporation, issued a general liability insurance policy to Edward Urioste's M & M Cafe in Albuquerque.

Plaintiff Lee Sena is a minor residing in Bernalillo County, New Mexico. Ms. Sena was employed as a bus girl at Urioste's M & M Cafe. In 1989, Ms. Sena sued Mr. Urioste in state court, alleging that Mr. Urioste made sexual overtures to her. Plaintiff charged Mr. Urioste with negligent touching, battery, intentional infliction of emotional distress, and negligent infliction of emotional distress.

The liability policy was in effect at the time, but Travelers denied Mr. Urioste's demand to defend the lawsuit on his behalf. On May 26, 1989, a settlement was entered against Mr. Urioste in the amount of $40,000.00 in compensatory damages and $20,000.00 in punitive damages. Mr. Urioste subsequently filed a petition for bankruptcy.

As a term of the settlement, Mr. Urioste assigned to Ms. Sena his rights and claims as against Travelers. Ms. Sena sued Travelers in state court for breach of contract, breach of the covenant of good faith and fair dealing and violations of the New Mex-

ico Insurance Code. Defendant removed the action to this court, alleging diversity of citizenship and an amount in controversy of at least $60,000.00. Travelers filed a motion for summary judgment, arguing that Mr. Urioste's conduct was intentional and therefore not an occurrence under the policy, that plaintiff did not suffer bodily injury covered by the policy, and that the contractual exclusion for injury to employees also bars relief.

## DISCUSSION

A motion for summary judgment is properly granted only when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). In this case, defendant bears the burden to prove the absence of a fact issue for trial. *See id.* at 157, 90 S.Ct. at 1608. The facts must be construed in plaintiff's favor, and the court must draw all inferences in favor of finding triable issues. *See Luckett v. Bethlehem Steel Corp.*, 618 F.2d 1373, 1377 (10th Cir.1980).

New Mexico's substantive insurance law governs in this diversity action. *See Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Farmers Alliance Mut. Ins. Co. v. Bakke*, 619 F.2d 885 (10th Cir.1980). Unfortunately, there is no New Mexico Supreme Court case addressing whether sexual assault is the kind of intentional act to which liability insurance does not apply. Therefore, I must examine the "decisions of other states, New Mexico and federal decisions, and the general weight and trend of authority" to predict how the New Mexico Supreme Court would rule under these facts. *Bakke, supra* at 888.

Most of the published decisions in this area involve child molestation. Some involve adult women encountering sexual harassment at work. *See e.g., Continental Ins. Co. v. McDaniel*, 160 Ariz. 183, 772 P.2d 6, 7 (App.1988) (coverage under comprehensive business policy for sexual harassment of a female employee); *Seminole Point Hosp. Corp. v. Aetna Cas. &*

*Sur. Co.*, 675 F.Supp. 44 (D.N.H.1987) (coverage for sexual advances by company president against female employees). Given that the analysis varies little, and that Ms. Sena was a minor at the time of these incidents, I will examine both types of cases.

### 1. Duty to Defend

■ Under New Mexico law, an insurance company has a duty to defend when the complaint filed against the insured alleges facts potentially within the coverage of the policy. *State Farm Fire and Cas. Co. v. Price*, 101 N.M. 438, 442, 684 P.2d 524, 528 (Ct.App.1984), *cert. denied*, 101 N.M. 362, 683 P.2d 44 (1984). This contract provides that the insurer "shall have the right and duty to defend any suit against the Insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent ..." *Defendant's Exhibit B, Special Comprehensive General Liability Form* at 1.

The duty to defend is not determined by "the ultimate liability of the insurance company, but is based solely on the allegations of the complaint. Only where the allegations are completely outside policy coverage may the insurer justifiably refuse to defend." *Price, supra* 101 N.M. at 442, 684 P.2d at 528 (citations omitted).

■ Any doubt about whether the allegations are within policy coverage is to be resolved in the insured's favor. *Id.* Even if the complaint fails to allege facts with sufficient clarity to make a determination of coverage from the face of the complaint, the insurer will have a duty to defend if the facts which are alleged simply *tend* to show an occurrence within the coverage. *Foundation Reserve Ins. Co. v. Mullenix*, 97 N.M. 618, 619–20, 642 P.2d 604, 605–606 (1982); *American Emp. Ins. Co. v. Continental Cas. Co.*, 85 N.M. 346, 348, 512 P.2d 674, 676 (1973). Thus, to prevail on summary judgment, defendant must prove as a matter of law that Ms. Sena's complaint neither shows nor even tends to show an occurrence within the coverage of Mr. Urioste's liability insurance policy.

Defendant raises three arguments in support of its motion. First, Travelers argues that Mr. Urioste's sexual overtures to the plaintiff were intentional acts, and not accidents within the scope of the policy. Second, Travelers asserts that the contractual definition of "bodily injury" does not encompass the kind of emotional harm suffered by Ms. Sena. Third, defendant argues that this contract excludes claims for "bodily injury to any employee of the insured arising out of and in the course of their employment by the insured for which the insured may be held liable as an employer or in any other capacity." *Liability Form, supra* at 2, Exclusion (j).

I agree that plaintiff alleges intentional, rather than accidental acts. Summary judgment is granted on that basis. I do not reach the questions of whether emotional distress amounts to bodily injury under the contract or whether Ms. Sena's injuries arose out of and in the course of her employment at Urioste's M & M Cafe.

## 2. Scope of this Policy

■ This is a policy for general liability and property insurance. The Named Insured is Urioste's M & M Cafe, however, the policy is designated as "individual", meaning that Mr. and Mrs. Urioste are insured persons with respect to the conduct of the business. *Defendant's Exhibit B* at 1; *Liability Form, supra* at 5.

The policy provides that "[t]he Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of Coverage A—bodily injury or Coverage B—property damage to which this insurance applies, caused by an occurrence...." *Liability Form, supra* at 1. An " '[o]ccurrence' means an accident, including continued or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured...." *Liability Form, supra* at 11.

To decide if an injury was an accident, New Mexico courts will examine the accidental or intentional quality of the precise event or act causing injury. *See e.g., San-*

*ford v. Presto Mfg. Co.*, 92 N.M. 746, 748, 594 P.2d 1202, 1204 (Ct.App.1979) (workers compensation). "The element of unexpectedness, inherent in the word 'accident' is sufficiently supplied either if the incident itself is unusual, the act or conditions encountered abnormal, or if, though the act is usual and the conditions normal, it causes" unforeseen and unexpected harm. *O'Rourke v. New Amsterdam Cas. Co.*, 68 N.M. 409, 413, 362 P.2d 790, 794 (1961) (quoting *Stevenson v. Lee Moor Contracting Co.*, 45 N.M. 354, 115 P.2d 342, 350 (1941)); *see also Vihstadt v. Travelers Ins. Co.*, 103 N.M. 465, 709 P.2d 187 (1985); *Scott v. New Empire Ins. Co.*, 75 N.M. 81, 83–85, 400 P.2d 953, 955–57 (1965).

The definition also refers to injuries neither expected nor intended "from the standpoint of the insured." *Liability Form, supra* at 11. Some contracts apply a reasonableness test, for example, excluding "damage which may reasonably be expected to result" from an intentional act. *See e.g., Allstate Ins. Co. v. Foster*, 693 F.Supp. 886, 887 (D.Nev.1988). However, this contract seems to exclude only those injuries which were actually intended or expected by the insured.

Plaintiff suggests that "the insured" means Urioste's M & M Cafe and Mrs. Urioste, as well as Mr. Urioste. Her argument is that even if *Mr.* Urioste expected or intended this harm, it was accidental, unexpected and unintended from the perspective of *Mrs.* Urioste and Urioste's M & M Cafe.

The policy and New Mexico law establish otherwise. First, this policy states that it shall apply "separately to each Insured against whom claim is made or suit is brought". *Liability Form, supra* at 11. Second, in a similar case, the New Mexico Supreme Court held that " 'the Insured' was meant to refer to a definite, specific insured, namely the insured who is involved in the occurrence which caused the injury and who is seeking coverage under the policy." *Safeco Ins. Co. of America, Inc. v. McKenna*, 90 N.M. 516, 519, 565 P.2d 1033, 1036 (1977).

Admittedly, if Ms. Sena had sued Mrs. Urioste for some negligence in connection with these events, Travelers would have incurred a separate duty to defend her. *See McKenna, supra* (insurer had no duty to defend son charged with assault and battery but did not contest its duty to defend and indemnify father, who was sued for negligent failure to exercise discipline and control over the boy); *but see Allstate Ins. Co. v. Gilbert*, 852 F.2d 449, 453 (9th Cir.1988) (where contract excluded coverage for intentional acts by *"an* insured person", insurer had no duty to defend child molester's spouse charged with negligence) (emphasis added).

Here, plaintiff claimed wrongdoing by Mr. Urioste alone. Mr. Urioste made the demand to Travelers. Mr. Urioste assigned to plaintiff *"his* rights to pursue Travelers for *his* rights and claims." *Plaintiff's Memorandum Brief In Opposition to Defendant's Motion for Summary Judgment* at 2 (emphasis added). Mr. Urioste is "the insured" at issue here. The intentions or expectations of another insured on the policy are immaterial.

### 3. Coverage for Sexual Molestation or Assault

Ms. Sena alleged volitional acts. It strains the imagination to speculate how a pattern of sexual overtures and touching can be accidental. *See J.C. Penney Cas. Ins. Co. v. M.K.*, 52 Cal.3d 1009, 278 Cal. Rptr. 64, 804 P.2d 689, 700, n. 17 (1991) (en banc), *cert. denied* —— U.S. ——, 112 S.Ct. 280, 116 L.Ed.2d 232 (1991) (noting, in dicta, that "the very notion of 'accidental' child molestation is implausible."). Moreover, there is no suggestion here, as in some cases, that Mr. Urioste was incapable of forming intent. *See e.g., State Farm Fire and Cas. Co. v. Abraio*, 874 F.2d 619, 622–23 (9th Cir.1989) (intent to harm would be inferred despite psychiatric testimony that insureds lacked the mental capacity to "govern their sexual attraction in accordance with reason.")

The problem in many instances, however, is that the insured, while admitting that he committed sexual acts, claims that he was well-intentioned and neither expected nor intended to cause any harm. *See e.g., Continental Ins. Co. v. McDaniel*, 160 Ariz. 183, 772 P.2d 6, 7 (App.1988) (insured seeking coverage under comprehensive business policy testified that the purpose of his vulgar language, grabbing and fondling of a female employee was mutual satisfaction and pleasure). On occasion, evidence of the insured's non-malicious subjective intent has been held to defeat summary judgment and require a finding of fact as to the insured's intent. However, these cases have largely been superseded. *See e.g., State Farm Fire and Cas. Co. v. Estate of Jenner*, 856 F.2d 1359 (9th Cir.1988), *superseded*, 874 F.2d 604 (9th Cir.1989); *Zordan By and Through Zordan v. Page*, 500 So.2d 608 (Fla.App.1986), *overruled, Landis v. Allstate Ins. Co.*, 546 So.2d 1051, 1053 (Fla.1989).

#### a. Out-of-State Cases

Most courts will find actions of this kind to be intentional and excluded from insurance coverage as a matter of law. The courts reach this result in a variety of ways. Some courts conclude that no rational jury could find the insured to have been well-intentioned or that the insured's statements provide insufficient credible evidence to withstand summary judgment. *See e.g., Abraio, supra* at 623 (where insured had pled guilty to child molestation, a general intent crime, intent to injure was the only rational inference); *Roe v. State Farm Fire & Cas. Co.*, 259 Ga. 42, 376 S.E.2d 876, 877 (1989).

The courts may also find constructive intent to harm, notwithstanding the insured's protestations, on the grounds that emotional or physical harm is substantially certain to result from sexual harassment or molestation. *See e.g., K.A.G. by Carson v. Stanford*, 148 Wis.2d 158, 434 N.W.2d 790, 793 (App.1988) ("the more likely harm is to result from certain intentional conduct, the more likely intent to harm may be inferred as a matter of law."); *McDaniel, supra* 772 P.2d at 8; *Seminole, supra* at 46–47.

Finally, most states find that intent to harm is implicit in an act of sexual assault

or molestation, such that intent to harm can be inferred from intent to commit the act. *See e.g., Roe, supra* 376 S.E.2d at 877 (rebuttable presumption of intent to harm); *Morton by Morton v. Safeco Ins. Co.,* 905 F.2d 1208 (9th Cir.1990) (irrebuttable presumption of intent to harm); *Mutual of Enumclaw v. Merrill,* 102 Or.App. 408, 794 P.2d 818, 820 (1990); *Abraio, supra* at 623; *Allstate Ins. Co. v. Talbot,* 690 F.Supp. 886, 890 (N.D.Cal.1988). In an *en banc* decision, the Supreme Court of California stated: "The act is the harm. There cannot be one without the other. Thus, the intent to molest is, by itself, the same as the intent to harm." *Penney, supra* 804 P.2d at 695.

### b. New Mexico Law

■ This last approach is most consonant with New Mexico law. In the criminal law area, it is virtually assumed that intent will not be shown by direct evidence, but by the surrounding acts and circumstances. *See e.g., State v. Frank,* 92 N.M. 456, 458, 589 P.2d 1047, 1049 (1979). New Mexico law also establishes that liability insurance will not extend to deliberate, harmful acts even if the resulting injury is somewhat different than what the insured intended. *See Vihstadt v. Travelers Ins. Co.,* 103 N.M. 465, 709 P.2d 187 (1985) (aspirin poisoning caused by voluntary and deliberate ingestion of 50 aspirin was not an accident, even though the insured's intent was to scare her mother or commit suicide, not to induce aspirin poisoning).

■ In other words, the insured need not intend to cause the particular type of harm, so long as the act was inherently harmful, it was performed voluntarily and deliberately, and the injury was the direct, natural result. *See id.* at 467, 709 P.2d at 189. Ms. Sena alleges sexual misconduct, done voluntarily and deliberately, resulting in emotional distress. I find that the insured's intent to harm can be inferred as a matter of law in cases involving sexual misconduct.

It is important to note that we have almost no factual development in this case, and no admissions or assertions from Mr.

Urioste as to his intent. *See Penney, supra* 804 P.2d at 704 (Broussard, J., dissenting) (intent to harm should not be inferred in the absence of a record). However, under New Mexico law, the allegations of the complaint are dispositive. *See e.g., Insurance Co. of North America v. Wylie Corp.,* 105 N.M. 406, 409, 733 P.2d 854, 857 (1987) (no duty to defend where allegations place complaint squarely within exclusionary clause). Moreover, Rule 56(e) of the Federal Rules of Civil Procedure requires the party responding to a properly supported motion for summary judgment to point to specific facts demonstrating a genuine fact issue for trial. Plaintiff did not allege or set forth facts tending to show an "occurrence" as defined by the policy. I find that Travelers had no duty to defend Mr. Urioste in the lawsuit, and did not breach its contract with the insured.

### 4. Public Policy

I agree with defendant that there are larger public policy interests at stake in these cases. On the one hand, the exclusion for intentional acts seeks to deter deliberate wrongful conduct by holding the wrongdoer solely liable for the consequences of his actions. *See Safeco Ins. Co. of America, Inc. v. McKenna,* 90 N.M. 516, 519, 565 P.2d 1033, 1036 (1977); *but see* Fischer, *The Exclusion from Insurance Coverage of Losses Caused by the Intentional Acts of the Insured: A Policy in Search of a Justification,* 30 Santa Clara L.Rev. 95 (1990). One commentator also speculated that "[t]he average person purchasing homeowners insurance would cringe at the very suggestion that he was paying for such coverage." Grellmann, *Insurance Coverage for Child Sexual Abuse Under California Law: Should Intent to Harm be Specifically Proven or Imputed as a Matter of Law?,* 18 Sw.U.L.Rev. 171, 181 (1988).

On the other hand, liability insurance may be a victim's only recourse, especially in instances where the molester is incarcerated for his actions or, as in this case, files a petition in bankruptcy. *See Penney, supra* 804 P.2d at 701–705 (Broussard, J.,

dissenting) (rights and interests of victims militate against exonerating insurers). Victims seeking compensation from a molester's liability insurance are confronted with a difficult choice between minimizing the molester's intent, if they can, and eschewing a possible source of relief.

Travelers argues that public policy counsels the summary dismissal of these cases in order to avoid placing victims in the "awkward and distasteful" position of having to argue that a molester's actions were accidental or well-intentioned. *Memorandum Brief in Support of Defendant's Motion for Summary Judgment* at 13. This argument is self-serving. One must assume that plaintiff takes this position because of her desire for relief.

Even so, this court "will not make a contract of insurance, but will only enforce the intent of the [insured and insurer] as manifested by the writing." *Horn v. Lawyers Title Ins. Corp.*, 89 N.M. 709, 711, 557 P.2d 206, 208 (1976). The contractual exclusion for intentional acts clearly applies here. *See also McKenna, supra* 90 N.M. at 520, 565 P.2d at 1037; *Chavez v. State Farm Mut. Auto. Ins. Co.*, 87 N.M. 327, 533 P.2d 100 (1975); *Farmers Alliance Mut. Ins. Co. v. Bakke*, 619 F.2d 885 (10th Cir.1980) (insurance is fundamentally a matter of contract and of state law).

### 5. Alleged Bad Faith and Statutory Violations

"New Mexico does not adhere to a single definition of bad faith in the context of insurance matters." *Ambassador Ins. Co. v. St. Paul Fire & Marine Ins. Co.*, 102 N.M. 28, 31, 690 P.2d 1022, 1025 (1984) (emphasis omitted). To satisfy the implied covenant of good faith and fair dealing, the insurer must give equal consideration to its interests and to the interests of the insured. *See e.g., Lujan v. Gonzales*, 84 N.M. 229, 236, 501 P.2d 673, 680 (Ct.App. 1972), *cert. denied, Gonzales v. Allstate Ins. Co.*, 84 N.M. 219, 501 P.2d 663 (1972) ("there must be a fair balancing of these interests").

In the context of an insurer's duty to defend, even a good faith belief that there is no coverage will not shield an insurer from liability if there is conflicting evidence suggesting coverage. *Lujan, supra* 84 N.M. at 234, 501 P.2d at 678. An insurer may justifiably refuse to defend only where the allegations are completely outside policy coverage. *State Farm Fire and Cas. Co. v. Price*, 101 N.M. 438, 442, 684 P.2d 524, 528 (Ct.App.1984).

Ms. Sena's breach of contract and bad faith claims hinge on her conviction, and that of Mr. Urioste and his attorney, Chris Key, that Travelers refused to defend Mr. Urioste even though "the face of the complaint set forth facts that fell within coverage of the policy." *Plaintiff's Memorandum* at 16. I have found, as a matter of law, that plaintiff did not allege facts even tending to show an "occurrence" under this policy. I find no evidence of breach or bad faith here. *See Suggs v. State Farm Fire and Cas. Co.*, 833 F.2d 883 (10th Cir.1987), *cert. denied*, 486 U.S. 1007, 108 S.Ct. 1732, 100 L.Ed.2d 196 (1988) (reasonable minds could not differ that there was no bad faith); *see also Allstate Ins. Co. v. Gilbert*, 852 F.2d 449, 455 (9th Cir.1988) ("Because we hold that Allstate had no duty to indemnify or defend [the child molester and his wife], it follows that it did not breach the contract, or the covenant of good faith and fair dealing or [violate California law].").

Similarly, § 59A–16–20(E) of the New Mexico Insurance Code lists as an unfair claims practice "not attempting in good faith to effectuate prompt, fair and equitable settlement of an insured's claims in which liability has become reasonably clear." N.M.Stat.Ann. (Repl.1988). Giving my ruling on duty to defend, this claim also fails.

### CONCLUSION

I find that plaintiff did not allege facts tending to show an "occurrence" under this policy. Intent to harm will be inferred as a matter of law from these allegations of sexual misconduct. There being no duty to defend, I find no genuine issue of material fact as to breach of contract, breach of the covenant of good faith and fair dealing or violations of statute. Travelers' refusal to

defend Mr. Urioste was reasonable and in good faith. Defendant is entitled to judgment as a matter of law.