28 P.(2d) 529

# G O S CATTLE CO. v. BRAGAW'S HEIRS et al.

## No. 3793.

Supreme Court of New Mexico.

Sept. 27, 1933.

C. C. Royall, of Silver City, for appellants.

Wilson & Woodbury, of Silver City, for appellee.

ZINN, Justice.

This is a suit to quiet title.

The land involved is the W. ½ S. E. ¼ and the S. ½ N. E. ¼ of section 27, township 14 south, range 11 west, N. M. Meridian, located in Grant county, N. M., known as the Hefley place. John M. Hefley had acquired the land by patent from the United States of America, and conveyed the same to John H. Bragaw on August 1, 1889.

The evidence shows, and the trial court found, that beginning with the year 1897 and up to the 25th day of February, 1911, the land was generally known as the property of and was exclusively occupied and used by the Mountain Range Cattle Company for the purpose of grazing and running cattle thereon, and that beginning with the year 1897 and thereafter continuously up to and including the year 1910 said premises were valued, assessed, and taxed by the county of Grant and state of New Mexico in the name of said Mountain Range Company, and all of the taxes levied thereon were by it paid.

It also appears from the evidence that on March 16, 1904, Joseph A. Potter and Abbie A. Potter, together with Bragaw, the three being the owners of the capital stock of the Mountain Range Company, entered into a

contract in writing with one Victor Culberson and associates for the sale of all of the capital stock of the Mountain Range Company for the price of $80,000, of which $1,500 was cash, the remainder evidenced by a series of notes secured by the shares of stock sold to Culberson and his associates.

From 1900 to 1904, John H. Bragaw was vice president and manager of the Mountain Range Company.

Culberson and his associates had purchased the G O S Cattle Company and the S P C property, intending to merge all of the properties, that is the Mountain Range, the G O S and S P C, under the ownership and management of one corporation, to wit, the appellee corporation.

About June 29, 1908, a rearrangement was made as to the financing and payment of the obligations of the appellee corporation involved in the blocking of the range property, and Bragaw, who had theretofore received $28,000 of the $40,000 due him as the half owner of the capital stock in the Mountain Range Company, accepted unsecured notes of the appellee corporation. The original patent issued by the United States of America to Hefley, together with the deed from Hefley to Bragaw, were then delivered to the attorney for the appellee corporation, with instructions to proceed with the preparation of conveyances vesting title to all the merged property in the appellee corporation. On the 25th day of February, 1911, said Mountain Range Company transferred to appellee by warranty deed the premises in question. The land in question has always been used as grazing land in connection with the business of cattle raising, and from the 25th day of February, 1911, to the present time appellee has used said premises for grazing and running of cattle in connection with adjacent lands and in the same manner as the same were used by the Mountain Range Company, and appellee, from the 25th day of February, 1911, under color of the deed of conveyance from the Mountain Range Company, to the present time has held possession of said premises under claim of right in good faith, which possession was and is actual, visible, open, exclusive, and hostile to and inconsistent with the claims of all others, and continuous and unbroken, and appellee has, commencing with the year 1911 and extending to the present, paid all taxes, state, county, and municipal, which, during that period, have been levied upon the premises, and from the 25th day of February, 1911, to the time the suit was instituted none of the appellants or any other person made or asserted any claim of any right, title, or interest in or to the premises adverse to appellee.

Apparently the method selected by Culberson and his associates in merging the various properties was by purchase of the capital stock of the corporations apparently owning the range and live stock. As the interests of the vendors in these stocks were different, it was necessary for a time to keep the properties separate. In 1908, however, it became possible to actually combine them. From that time forth the G O S Cattle Company was to own the original G O S property, all of the Mountain Range property and all of the S P C property.

The record fails to show any formal conveyance of the Hefley place from Bragaw to the Mountain Range Company, but the Mountain Range Company of which Bragaw was vice president and manager had possession of the patent from the United States of America to Hefley and the deed from Hefley to Bragaw, which patent and deed were delivered to the attorney for the appellee corporation with instructions to make the necessary conveyances.

Bragaw died in 1910, and Culberson and the Potters are likewise now dead, and none of the original parties are available as witnesses, except the attorney who handled the legal transactions involving the merger of the properties and the transfer of the land.

The suit is defended by the heirs of Bragaw, who contend that Bragaw before his death in the year 1910 gave the appellee the right to use the land for payment of taxes until such time as Bragaw desired to use the same, and that the Mountain Range Company, which never had record title to the land, gave to the G O S Cattle Company a deed on February 25, 1911, and that because the officers, directors, and stockholders of the Mountain Range Company were the officers, directors, and stockholders of the G O S Cattle Company, and the said Mountain Range Company having never owned said land had no right to convey the same, and that the said deed was without right or authority and was a fraud upon the defendants and constituted a cloud upon their title. The appellants also contended that the appellee at the time of the execution of the said deed knew that the same was executed without right or authority, and that the heirs of Bragaw have been at all times since his death the owners in fee simple of the said land and premises.

The case was tried to the court without a jury on the 21st day of November, 1931. On December 8, 1931, the court made and entered its final decree finding that the said deed of February 25, 1911, was made by the grantor and accepted by the grantee in good faith; that the said deed constituted color of title in appellee; and that since that time the appellee has held possession of the said premises under claim of right in good faith, which was actual, visible, open, exclusive, and hostile to and inconsistent with the claim of all others, and continuous and unbroken, and quieted title by reason of adverse possession in good faith under color of title in the appellee.

From this judgment and the findings of the court the appellants have taken this appeal.

The appellants rely upon numerous points on appeal to reverse the judgment; the first being that the appellee failed to sustain the burden of proof, though the appellants fail to point out wherein such failure lay. An examination of the record and evidence discloses that the appellee did prove its case and that the findings of the trial court are clearly sustained by the evidence and support the judgment.

The second contention of appellants is that the appellee did not acquire color of title nor hold the property adversely in good faith.

We do not quarrel with the general citations of law set forth in the appellants' brief, but we cannot see their applicability in the instant case, inasmuch as the court found as a matter of fact that the appellee corporation did acquire the property of the Mountain Range Company and held the same adversely in good faith, and which finding is supported by the evidence. Considering that under the terms of the original contract made March 16, 1904, Culberson and his associates took possession, control, and management of the Mountain Range property, and assumed that the Hefley place was part of said property, which assumption was never disputed by Bragaw during his lifetime, coupled with the further fact that when all arrangements for the merging of all the properties were completed about June 29, 1908, there was delivered to the attorney for the appellee, not only the original patent issued by the United States of America to Hefley, but also the deed from Hefley to Bragaw, and that from 1897 to 1910 the property in question had been assessed and the taxes paid by the Mountain Range Company, the good faith of Culberson and his associates in assuming that they had purchased the Hefley place and the holding of the same after taking possession and control, and the good faith of their successors, the appellee, can hardly be disputed or questioned. True the appellants attempt to show that Bragaw made a statement in the presence of William Henry Bragaw and George Sibole that Bragaw had retained his "personal property" from the sale for his own use and never deeded it to the Mountain Range Company and was merely allowing the appellee to use the same until such time as Bragaw wanted it. Whether such statement was applicable to the premises in question or to some other piece of property theretofore belonging to Bragaw is not determined or pointed to by the evidence offered, and it appears to us that such statement might be as applicable to one tract of land as another, and coupling such uncertainty of description with the further fact that ordinarily in the sale of a large ranch property involving some $80,000 it is not customary to withhold a small tract of deeded land, makes such evidence doubtful of value if admissible, which the appellee questions, and which is not necessary for us to decide.

While the fact that the officers and stockholders of the grantor corporation are the identical officers and stockholders of the grantee corporation suggests careful scrutiny by a court of equity to determine whether the conveyance was made in good faith, nevertheless all the circumstances surrounding the instant transaction, beginning with the joint venture of Bragaw and the Potters, the continuous return of the property for taxation in the name of the Mountain Range Company, the payment of taxes by the Mountain Range Company, together with the other incidents surrounding the transfer of the property, as heretofore pointed out, are circumstances in aid of the claim of good faith which require us to uphold the trial court's finding.

The original patent to Hefley and Hefley's deed to Bragaw, which were given to the attorney for appellee with instructions to make proper conveyances to the appellee of the property in question, must have come from

the custody of either Bragaw himself or the Mountain Range Company. If they came from the custody of Bragaw, Culberson and his associates and their attorney were justified in assuming that Bragaw was turning them over in connection with his relinquishment of all rights in the Mountain Range Company, or if the deeds came from the custody of the Mountain Range Company, they must previously have reached that custody by the act of Bragaw devoting this property to the uses of the Mountain Range Company, which devotion is made clear by his act as general manager in having the Hefley place assessed and taxed to the Mountain Range Cattle Company. However, if Bragaw, at the time of turning over these papers, entertained an intention to reserve the Hefley place for himself, he acted in anything but good faith in not then asserting and giving notice of his intention, and Culberson and his associates were justified in acting upon the whole set of conditions as they knew them and they cannot now be charged with bad faith in so acting, and the court was not in error in so holding.

█ It is next contended by appellant that the possession of appellee was neither open, visible, nor hostile, because the particular tract of land in question had never been fenced, no one was living on it, no hay was cut, no inclosure, no improvements, and could not be distinguished from the other adjacent land except that it was on the Mimbres river. That the land was used for grazing, watering, and salt land, the appellant does not question. That it was used for such purpose as found by the trial court is supported by substantial evidence.

The appellant cites Jenkins v. Maxwell Land Grant Company, 15 N. M. 281, 107 P. 739, 740, in support of his contention that because the land was not inclosed no open possession could be proven. We do not see it that way. The case of Jenkins v. Grant Company et al., supra, is easily distinguishable from the case at bar, in that the court there found that during the period of time when the appellee was running his cattle on the land in that controversy, the Sugarite Cattle Outfit as well as other persons were grazing their cattle on the same land, and in that case the use of the grazing land in question was not shown to be exclusive, as is true in the instant case. In the Jenkins v. Grant Company Case, supra, the territorial Supreme Court, speaking through Judge Cooley, citing the case of Whitney v. United States, 167 U. S. 529, 546, 17 S. Ct. 857, 42 L. Ed. 263, in 15 N. M. at page 288, 107 P. 739, quoted from the United States Supreme Court the following statement which is clearly applicable here: "Had it been shown that this possession was complete, adverse, and undisputed during the whole life of this grant, such possession would probably be regarded as complete evidence of title."

The record here shows that Culberson and his associates, and their successors to this day, have had complete, adverse, and undisputed possession of the premises in question, and neither the appellants nor any one else ever disputed such possession, and no other person or persons pastured or had the same

right to pasture their cattle upon these lands. Neither is the case of Montoya v. Catron, 22 N. M. 570, 166 P. 909, cited by appellant, applicable here. In that case the land in question had been in the concurrent possession of both parties, which is not true here.

The law controlling and applicable here is as was stated by this court in the case of Baker v. Armijo, 17 N. M. 383, 128 P. 73, 75, where we said: "It has been settled that to constitute an adverse possession there need not be a fence, building, or other improvement made; it sufficing, for this purpose, that visible and notorious acts of ownership be exercised, for the statutory period, after an entry under claim and color of title. Ewing v. Burnet, 11 Pet. 49, 9 L. Ed. 628. The uses to which the property can be applied, or to which the owner, or claimant, may choose to apply it, the nature of the property, and its situation are largely controlling factors in determining what acts of ownership might be considered requisite to the assertion of an adverse claim."

The land in dispute here has been used at all times as a watering place for cattle and as a salt ground and range. The cattle belonging to the appellee were the only cattle using the place, and the appellee was the only one ever claiming the property, and such claim was open and notorious.

Actual possession of land consists in exercising acts of dominion over it and in making the ordinary use of it to which it is adapted, and in taking the profits of which it is susceptible. See Johnston v. Albuquerque, 12 N. M. 20, 72 P. 9.

If the land were of such nature that fencing or construction of buildings would be proper to denote ownership and possession, the argument of appellant might prevail; but where a rancher and owner of a large range, in good faith, has possession of an L-shaped tract of land in the middle of his range, which he uses for watering his cattle, and as a salt ground and range, it is not necessary that the same be fenced or other improvements made thereon; it being sufficient that visible and notorious acts of ownership be exercised after an entry under claim of right and color of title.

The next theory of appellant is that the possession of Culberson and his associates was originally permissive, and that the evidence does not show that such permissive possession had ever been converted into adverse possession. The appellants' theory is based on their evidence that Bragaw in 1904 had said he had withheld the land in question to his own use, merely permitting Culberson and his associates to use the same as long as they paid the taxes and until such time as he (Bragaw) wanted the same for himself. As we pointed out earlier in this opinion, the testimony offered by appellants supports no such theory and does not bear out the appellants' contention, and the lower court did not so find, and we see no merit in the proposition that the original possession of Culberson and his associates was merely permissive possession and not adverse possession.

It is next contended by appellants that a suit to quiet title was not the remedy available to appellee because the appellee should

have instituted suit against Bragaw during his lifetime to compel Bragaw to make, execute, and deliver to the Mountain Range Company, or the appellee corporation, a deed to the premises in question, if the appellee or Culberson and his associates actually purchased this tract of land in the numerous negotiations by which the property of Bragaw and the Mountain Range Company vested in appellee. The appellee in the court below brought suit to quiet title, the appellants answered and filed a cross-complaint seeking a decree quieting title in them as against the appellee, and did not at that time question the remedy sought by the appellee and will not now be heard to do so for the first time.

It is finally urged by appellants that inasmuch as the evidence shows the deed from the Mountain Range Company to the appellee to be either fraudulent or given under a mistake as to the rights of the appellants, and that they (the appellants) having only discovered the same when this suit was brought, that the statute of limitations could not begin to run against them until such discovery of mistake or fraud, as provided by 1929 Comp. St. § 83-123, and therefore the ten-year period of limitation as against these appellants had not run.

There is no evidence of either mistake or fraud in the manner in which the appellee acquired title and possession of the land in question. Appellants failed to urge in the court below that the ten-year limitation had not run as against them and cannot be heard to do so here for the first time.

Finding no error in the judgment of the court below, the same will be sustained and affirmed, and the cause remanded.

It is so ordered.

WATSON, C. J., and SADLER, HUDSPETH, and BICKLEY, JJ., concur.