557 P.2d 206

Calvin P. HORN and C. Ruth Horn, his wife, and H. B. Horn and Lucille Horn, his wife, Plaintiffs-Appellees,

v.

**LAWYERS TITLE INSURANCE CORPORATION, Defendant-Appellant,**

v.

A. E. THOMAS and Mura Thomas, his wife, Robert P. Tinnin and Frances Tinnin, his wife, Arthur P. Quinn and Elizabeth Quinn, his wife, and M. M. Hardin, Involuntary Plaintiffs-Appellees.

No. 10615.

Supreme Court of New Mexico.

Nov. 30, 1976.

Rehearing Denied Dec. 16, 1976.

Nordhaus, Moses & Dunn, Donald B. Moses, Jon H. Tuthill, Albuquerque, for defendant-appellant.

Horn & Showers, Thomas E. Horn, Albuquerque, for plaintiffs-appellees.

Joseph H. Mercer, Albuquerque, for involuntary plaintiffs-appellees.

## OPINION

GARNETT R. BURKS, Jr., District Judge.

This is an appeal from a judgment of the District Court of Bernalillo County in an action to recover damages for breach of a contract of title insurance. Defendant, Lawyers Title Insurance Corporation, will be referred to as "defendant". The real estate with which we are concerned will be referred to as the "Montoya Tract". Defendant, New Mexico Title Company, merely acted as an agent for defendant, and is not involved in the appeal.

Plaintiffs and involuntary plaintiffs purchased the Canon de San Diego Grant, a tract of land in Sandoval County, New Mexico, consisting of approximately 116,000 acres. Simultaneously therewith, they obtained from defendant a policy of title insurance covering portions of the property, including the Montoya Tract. This policy was written on June 27, 1961, at Albuquerque, Bernalillo County, New Mexico. By reason of such purchase, plaintiffs acquired a one-fifth undivided interest in and to the entire tract. In 1966, after having disposed of portions of the approximately 116,000 acres, plaintiffs and involuntary plaintiffs divided among themselves the acreage then remaining, and plaintiffs thus acquired title to the Montoya Tract.

Sometime after 1966, plaintiffs learned of adverse claims to the Montoya Tract, and sued in the District Court of Sandoval County to quiet title against Epifanio Montoya, et al. The result of this litigation was that the court, in substance, found the title of Epifanio Montoya, et al. to be superior to that of plaintiffs, and ordered plaintiffs' complaint dismissed with prejudice.

Defendant refused to indemnify plaintiffs under the policy of title insurance for the loss of the Montoya Tract, and this action was filed. The issues were tried to a jury. It was undisputed that prior to issuing its policy, defendant, through its agent, conducted a search of the records of Sandoval County, but failed to discover the adverse title, although the instruments showing the title of Epifanio Montoya, et al. were duly recorded in Sandoval County.

Epifanio Montoya was called as a witness for defendant. He testified that from 1952 until 1969 or 1971, he grazed cattle, and raised hay, oats and potatoes on the Montoya Tract; that during those years he stayed there on weekends during the late spring and summer and early fall, and made occasional visits at other times of the year; that he generally kept about two head of horses there from May to November; that whenever he was there, he lived in a house on the property; and that, in addition to the house, there were some corrals and a garage thereon. This testimony was undisputed.

Plaintiff, Calvin Horn, testified that in the winter of 1961, he drove over parts of the Canon de San Diego Grant, but did not visit the area of the Montoya Tract because snow had rendered the road impassable. The evidence showed that at all other

times of the year, the Montoya Tract was easily accessible by automobile. An agent of defendant, prior to the issuance of its policy, flew over the approximately 116,000 acres in an airplane, but did not specifically view the Montoya Tract.

The policy of title insurance was received in evidence. It was, for the most part, on a printed form furnished by defendant. The "Conditions and Stipulations" of the policy provided:

". . . 6. Nothing contained in this Policy shall be construed as insuring . . . (7) against loss or damage by reason of the rights, titles or occupancies of parties in actual possession of any or all of the property herein described at the effective date of this Policy, . . ."

At the conclusion of the trial, a verdict was returned awarding damages against defendant and for plaintiffs in the sum of $57,000. Judgment was entered thereon, and defendant appeals.

Defendant's principal point relied on for reversal is that plaintiffs' loss falls within the exception pertaining to the "rights, titles or occupancies of parties in actual possession." We have said that actual possession of land consists in exercising acts of dominion over it, and in making the ordinary use of it to which it is adapted, and in taking the profits of which it is susceptible. *G O S Cattle Co. v. Bragaw's Heirs*, 38 N.M. 105, 28 P.2d 529 (1933); *Johnston v. City of Albuquerque*, 12 N.M. 20, 72 P. 9 (1903). We agree that Epifanio Montoya was in actual possession of the Montoya Tract at all times material hereto. Plaintiffs insist, however, that their recovery should be upheld on the theory defendant breached an implied duty it owed them under the policy to make a careful search of the records relating to the Montoya Tract. As authority for their position, plaintiffs cite *Pruett v. Mississippi Valley Title Insurance Co.*, 271 So.2d 920 (Miss.1973); *Guarantee Abstract & T. Ins. Co. v. St. Paul F. & M. I. Co.*, 216 So.2d 255 (Fla.App.1968). The latter deci-

sion is distinguishable from the case at bar in that it involved an underground pipeline not apparent from the surface of the land. Even to the extent that the decisions cited above are on point, we find it difficult to accept the reasoning upon which they rest.

The rights and duties of the parties are fixed by the contract of title insurance. Indeed, plaintiffs state in their Answer Brief that their cause of action is in contract rather than tort. Hence, any duty on the part of defendant to search the records must be expressed in or implied from the policy of title insurance. We have carefully read the policy and cannot find any language expressing an intent to impose such a duty on defendant, nor any language from which such an intent can be implied. The only language remotely connected with the subject matter is a reference to the effective date of the policy as "the date of the final examination of the title." This can scarcely support an implication of a duty to search the records, nor does it give rise to any doubt or ambiguity which would call for application of the rule that the policy is to be strictly construed against the insurer. See *Fowler v. First National Life Insurance Co. of America*, 71 N.M. 364, 378 P.2d 605 (1963). It is well settled that the courts will not make a contract of insurance, but will only enforce the intent of the parties as manifested by the writing. *Erwin v. United Benefit Life Insurance Company*, 70 N.M. 138, 371 P.2d 791 (1962); *Moruzzi v. Federal Life and Casualty Co.*, 42 N.M. 35, 75 P.2d 320, 115 A.L.R. 407 (1938). Defendant clearly had no duty under the policy to search the records, and any search it may have actually undertaken, was undertaken solely for its own protection as indemnitor against losses covered by its policy.

Plaintiffs further urge that the exception pertaining to the "rights, titles or occupancies of parties in actual possession" applies only to "rights, titles or occupancies" not of record. They again cite *Pruett v. Mississippi Valley Title Insur-*

**712**

*ance Co.*, supra, to support their argument. The difficulty with plaintiffs' position is that the exception is neither expressly nor impliedly limited to "rights, titles or occupancies" not of record, but covers such "rights, titles or occupancies" irrespective of their source. Had the intent of the parties been otherwise, it could have easily been made known by employing language appropriate to that end. We cannot, under the guise of construction, force from plain words unusual or unnatural meanings. *Erwin v. United Benefit Life Insurance Company*, supra.

Other points have been argued, but it is unnecessary to decide them in view of the disposition we have made of the appeal.

It follows from what has been said, that the judgment of the District Court should be reversed, and the cause remanded with directions to enter judgment for defendant. Accordingly,

IT IS SO ORDERED.

OMAN, C. J., and McMANUS, J., concur.