641 P.2d 1094
**Edward P. DEVLIN, et al., Plaintiffs,**

**v.**

**Earl BOWDEN, Defendant-Third-Party Plaintiff-Appellant,**

**v.**

**FIRST AMERICAN TITLE INSURANCE COMPANY, Third-Party Defendant-Appellee,**

**and**

**Peter Duval, et al., Third-Party Defendants.**

**No. 5226.**

Court of Appeals of New Mexico.

Feb. 16, 1982.

Robert Dale Morrison, A Professional Corp., Taos, Fred M. Standley, Santa Fe, for defendant-third-party plaintiff-appellant, Bowden.

Sumner S. Koch, White, Koch, Kelly & McCarthy, P. A., Santa Fe, for third-party defendant-appellee, First American Title Ins. Co.

## OPINION

WALTERS, Chief Judge.

Bowden, appellant, listed for sale through the Devlins (who are not parties to this appeal) a 3,180-acre ranch in Taos County. The listing indicated that ownership of the property included 60% of all mineral rights. The Devlins obtained a purchaser who allegedly refused to consummate the sale either because Bowden was unable to convey 60% of the mineral rights or because some of the mineral rights on the ranch were owned by Johns-Manville Corporation. Bowden thereafter found another purchaser himself. The Devlins sued Bowden for a real estate commission on the first uncompleted sale, or for other alternative relief; Bowden filed a third-party claim against First American Title Company, which had prepared a title policy at the time of Bowden's purchase from his grantor, asking indemnification and damages for misrepresentation of the title status and negligence in searching the title, alleging coverage under the title insurance policy. Schedule B of the title policy excepted from coverage "Reservations contained in patents from the United States of America." The trial court granted summary judgment to First American, and Bowden appeals. We affirm.

The issues framed on this appeal are (1) the duty of a title company to search the public records to include a search into the status of mineral rights, and (2) the extent of coverage provided by the title policy sued on. The answer to these issues, on the facts of this case, must necessarily overlap; our discussion will not attempt to treat them separately.

The evidence before the trial court, in the form of documents, depositions, admissions, answers to interrogatories, and other pleadings, disclosed (and appellant seems to concede) that with the exception of a portion of one-half of § 18 and the entirety of § 19, T29N, R10E, Bowden's predecessors in title obtained patents from the federal government in which the mineral rights were reserved to the United States. Copies of the patents were not included in the record; we must rely on a title opinion rendered in 1952 as evidence of the reservations of mineral rights in all but the two sections mentioned above. That acreage, upon which appellant does not concede existence of a mineral reservation by the Government, was at the most 960 acres.

There is no dispute that the mineral rights on some 400 of the acres patented to Bowden's predecessors were obtained by Schundler & Co., later transferred to Johns-Manville Corp., by patent directly from the United States Government, to Schundler, in 1958. Schundler had earlier obtained from a previous surface owner in Bowden's chain of title a right of entry upon the same land, within the boundaries of the ranch, for the purpose of prospecting, mining, and removing minerals. Johns-Manville's patented mineral interest is not located on any portions of §§ 18 or 19, but is entirely within other sections shown by the title opinion to have been patented, with mineral reservations in the United States, to Bowden's predecessors.

In his Brief-in-Chief, Bowden claims that the "ownership [by Johns-Manville] of the mineral interests on a portion of the ranch constitute[d] a title defect for which Bow-

den was insured" by First American. In a footnote to that contention he points out:

No claim is being made by Bowden for any loss because of the reservation of a portion of the mineral interests by the United States because of the exception contained in the title insurance policy and because of the lack of interest in the minerals on the part of Bowden * * *.

That language, and our careful reading of appellant's briefs, confirm our conviction that appellant's entire case rests upon the failure of the title company to show the Johns-Manville mineral interest as a "defect" in Bowden's title; and whether the original patents to the 960 acres in §§ 18 and 19 contained mineral reservations is not a real bone of contention, nor is it material to this appeal.

The mineral interest of Johns-Manville and its predecessors by reason of its patent and the right to enter were filed of public record, and were discoverable by First American if it had searched the records of Taos County.

Bowden's analysis of a title company's duty to search has been clouded, we believe, by his discussion of New Mexico cases which have dealt with the nature of mineral interests. We have no disagreement with those cases, beginning with *Terry v. Humphreys*, 27 N.M. 564, 203 P. 539 (1922), and running through *Sachs v. Board of Trustees*, 89 N.M. 712, 557 P.2d 209 (1976), which reflect that a grant or reservation of oil, gas, or mineral interests is a grant or reservation of real property; and that unless those interests are reserved in the instrument of conveyance, they pass with the title to the land. We acknowledge, too, that the documents of title through Bowden's prior grantors made no reservation of mineral interests and there is the presumption then, that the minerals were conveyed with the surface interests.

But overlooked in this analysis is the fact that all of the cases discussing the transfer of title to both surface and minerals by an instrument which lacked the necessary reservation, at least tacitly concerned grantors who had both interests to convey. The record and the concessions in this case are capable of no other conclusion than that all of the minerals now owned by Johns-Manville originally were reserved to the United States in the Government's patents to Bowden's predecessors, as they were required to be under the federal Stockraising Homestead Act of 1916, specifically 43 U.S.C. 299.

Section 299 provided also that a stranger might enter on patented lands to prospect for minerals upon (1) obtaining permission from the homestead patentee and paying to him damages to crops or improvements, or (2) executing a bond to the United States to secure such damages for the benefit of the patentee. *See McMullin v. Magnuson*, 102 Colo. 230, 78 P.2d 964 (1938).

Consequently, the patent of the mineral interests on a portion of the land to Johns-Manville's predecessor in 1958, and the permit granted by the landowner to enter on those lands, have no bearing on the status of Bowden's title through the patentees of the surface interests. The patentees and their successors could convey only what they owned; the statute prohibited the federal government from issuing a patent that did not contain a reservation "of all the coal and other minerals" in the lands so patented; ergo, Bowden's grantor and those ahead of him in the chain of title had no mineral rights to convey.

A stream can rise no higher than its source, nor can one grant what he has not, nor grant to others rights in the property of a stranger which he does not himself possess.

*Miller v. State*, 174 Md. 362, 198 A. 710 (1938).

The absence of a mineral reservation clause in prior documents might have raised an expectation in Bowden that they were included in his document of title; that expectation cannot be raised to a legal determination that one may convey what he does not have to pass on. The rule is equally well established that a right or interest reserved in a duly recorded conveyance runs with the land and will be effective against all who claim title through the grantee, and even though subsequent deeds contain no

language showing the reservations made in a former deed within the chain of title, the reservation is not destroyed. *Schumski v. Hales Corners*, 14 Wis.2d 301, 111 N.W.2d 88, 86 A.L.R.2d 855 (1961); 23 Am.Jur.2d 303, Deeds, § 268.

Viewing in this manner Bowden's argument of "reasonable expectations," we now address the extent of First American's obligation to search the public records to determine the status of the mineral interests and thus to confirm or destroy such expectations.

Bowden's Brief in Chief asserts four points of error, as follows:

POINT I: THE OWNERSHIP BY JOHNS–MANVILLE OF THE MINERAL INTERESTS ON A PORTION OF THE RANCH IS A TITLE DEFECT FOR WHICH BOWDEN HAS INSURANCE COVERAGE

POINT II: THE LANGUAGE USED IN THE EXCEPTIONS SET FORTH IN SCHEDULE B TO THE TITLE INSURANCE POLICY IS NOT SUFFICIENT TO EXCEPT OR EXCLUDE ALL MINERAL INTERESTS FROM THE COVERAGE PROVIDED IN THE POLICY

POINT III: FIRST AMERICAN WAS NEGLIGENT IN FAILING TO PROPERLY SEARCH THE PUBLIC RECORDS AND DISCLOSE TO BOWDEN INFORMATION REGARDING THE MINERAL INTERESTS OF JOHNS–MANVILLE

POINT IV: THE GRANTING OF SUMMARY JUDGMENT IN FAVOR OF FIRST AMERICAN WAS IN ERROR AS THERE ARE GENUINE ISSUES AS TO MATERIAL FACTS AND FIRST AMERICAN IS NOT ENTITLED TO JUDGMENT AS A MATTER OF LAW

### I.

Considering Points I and III together and passing over Point II for the moment, we review first whether a claim of negligence, separate from the contractual obligation undertaken pursuant to the terms of a title insurance policy, can be maintained for failure to completely search the records and disclose to the insured whatever information is discoverable concerning mineral interests. The second question is whether the investiture of a mineral interest in one other than the owner of the surface rights is a "defect" in the title of the owner of those surface rights.

Appellant produced affidavits of a lawyer and an abstractor, both of whom were familiar with standard title search procedures; both of whom agreed that in their practice and experience title companies should "disclose facts regarding mineral rights on the property if the mineral rights were owned or held by someone other than the United States Government *or the owner of the fee simple estate*" or the surface owner. The lawyer asserted that ownership of mineral rights in the Government would not be a title defect; such ownership by a third party would be.

In addition to these affidavits, Bowden repeatedly states in his briefs that ownership by Johns-Manville of the mineral interests on a portion of the ranch constituted a title defect for which Bowden was insured, at the same time reiterating that the mineral interests reserved to the Government and not later conveyed to anyone by the Government constituted no defect. We are not cited to any case which so holds, and we are not enlightened by any argument which would justify the disparate treatment of one holder of the mineral interests vis-a-vis another as against the title of the owner of the surface rights only.

Bowden says that the terms of the policy itself *impose upon First American the duty* to search the public records. He points to the provision excluding certain defects "not shown by the public records" as clearly implying the necessity of searching those records so that shown defects would not fall within that exclusion. He stresses that "public records" is defined, thus "emphasizing the importance of the limitation of coverage to matters shown by the public records." He argues that the fee charged for the policy "specifically includes a title

search and examination fee, clearly imposing a duty to search and examine the title." He finally urges that the policy directly refers "to claims based on negligence, and a limitation placed on the amount recoverable because of negligence" as recognition "by the title company that it had the duty to "properly search" the public records "and locate the interest of Johns-Manville."

Were we persuaded by some authoritative law on the subject that the grant of a mineral interest to a stranger, by the same grantor who reserved that mineral interest in his conveyance to the owner of the surface interest, constituted a defect in the title of the surface owner, we might then agree that First American had some duty to search for such "defect." The logic in that premise escapes us, however, when the title of Bowden's grantor and his predecessors never embraced any mineral interests in the land. The affidavits do not support or create that proposition as a matter of law. Black's Law Dictionary defines "defect" as "a lack of absence of something essential to completeness." The title to the surface interests was complete no matter what happened to any of the mineral rights.

Secondly, in addition to the terms of the policy stressed by Bowden, there was the express provision that "[t]his policy does not insure against loss or damage by reason of the following: * * *. 2. Reservations contained in patents from the United States of America * * *. 6. Terms, conditions, and stipulations as contained in that Real Estate Contract... between... Seller and Earl Bowden * * *." Those contractual provisions necessarily must bear on Bowden's claims of "defect" and appellee's negligence in failing to search for such a "defect." We thus reach Point II in determining the validity of Points I and III.

It is undisputed that all of the land on which Johns-Manville held the patented mineral rights was the same land upon which Bowden's predecessors had obtained patents containing a reservation of minerals in the United States. Consequently, matters pertaining to "reservations contained in patents from the United States of Amer-

ica," being excluded from coverage, were not subject to any implied obligation to search the public records regarding the current status of those reservations. First American simply declined to cover that area of the bifurcated title. The law does not require a useless act. *Wells Fargo Bank v. Dax*, 93 N.M. 737, 605 P.2d 245 (Ct.App. 1979). As appellee suggests in its brief, if Bowden had ordered an abstract of title "excepting mineral or other reservations therein," essentially the same language as the policy in this case contained, could he reasonably complain if the abstract failed to show the names or descriptions of any reserved interests?

Bowden argues, as he did in his statement of "reasonable expectation," that the real estate contract and other documents between himself and his seller contained no indication that mineral rights were reserved; thus, First American's undertaking to insure title to the property described in the real estate contract contemplated insurance of title to the entire mineral and surface interests. That, too, might be an arguable position to take if it were not for exclusion No. 6 quoted above. First American specifically exempted itself from any liability arising from any claim Bowden might have against his seller which had its basis in the provisions (or lack of them) in the real estate contract.

An officer of the title company testified on deposition that it was the customary practice of his company, and industry-wide, to except from coverage "all items that have been alienated from title," and to recite the origin of the alienation. That was done in this case. That is evidence that the title company's search back through the chain of title to the original patentees disclosed reservations of minerals in the original patents. He said further: "[I]f the minerals are reserved, we would recite the origin of the reservation," and "if we except them on the policy, they are not covered on the policy and they are not pursued * * *. By eliminating it from the policy, we eliminate it from consideration of the policy." The company's explanation is rea-

sonable; because it expressly withdrew coverage of any losses resulting from the effect of reservations to the United States, the explanation probably was unnecessary to decide the extent of its obligation to search the public records regarding the mineral interests reserved.

We must agree with First American that, as a legal proposition, whether a common grantor who had deeded surface rights to A later deeds some of the mineral rights to B, it is irrelevant to the status of A's title. Once the mineral rights are excepted from A's title, they do not run with the surface rights and any alienation of all or a portion of those mineral rights by the common grantor at any time after A acquires his title can have no effect on A's or his successors' title. This rule of property law, though applying to the reverse of the proposition, was implicitly stated in *Sims v. Vosburg*, 43 N.M. 255, 258–59, 91 P.2d 434, 436 (1939), where it was said:

> The State of New Mexico and the United States have sold many thousands of acres of land in this state, reserving the mineral to the grantor. These lands are listed for taxes according to government survey, but no one would contend that a sale thereof for taxes could convey the minerals to the purchaser at a tax sale.

In the most recent New Mexico decision governing a title company's responsibility, *Horn v. Lawyer's Title Ins. Corp.*, 89 N.M. 709, 711, 557 P.2d 206 (1976), our Supreme Court said:

> The rights and duties of the parties are fixed by the contract of title insurance.

Appellant argues that *Horn* cannot apply because plaintiffs there sued in contract, and he has alleged a claim of negligence against First American. We think this is a difference without a distinction. If the contract of insurance expressly provides that it "does not insure" against loss or damage occasioned by "[r]eservations contained in patents from the United States," a court would overstep its authority by holding that even though the company could not be held liable for a loss resulting from those reservations, it would be negligent in failing to search the records to find out what happened to the mineral rights reserved. It is hornbook law that in order to find negligence for failure to act, there must be a duty to perform that act. *See* U.J.I. Civil 16.1, N.M.S.A.1978.

And as the final word on this portion of the appeal, we are convinced that despite appellant's diffuse contentions that the Government's conveyance to Johns-Manville of a portion of the minerals created a defect and caused the sale of the property to fall through, the real reason for collapse of the transaction was Bowden's inability to transfer at least 60% of the mineral rights— which neither he nor any of his predecessors in title ever had. The ownership by Johns-Manville was not a defect in Bowden's title; the existence of that ownership was a matter the title company never agreed to insure. If by the terms of the real estate contract in this case, there were representations regarding mineral interests on the ranch, those terms too were items expressly removed from coverage by the policy. The courts will not construe or rewrite a contract that is not ambiguous or uncertain in expressing the intent of the parties. *Horn v. Lawyers Title Ins. Corp., supra.*

## II.

The issues of fact which Bowden claims exist to defeat summary judgment, N.M.R. Civ.P. 56(c), N.M.S.A.1978, are the correctness of the trial court's ruling that summary judgment based on the reservation exception was in order; that the affidavits dispute the testimony regarding the standards of practice concerning the duty to search and disclose the status of mineral interests when some of the mineral interests reserved are later conveyed out of ownership in the United States. He also reminds us that questions concerning negligence "are not ordinarily subject to determination on a motion for summary judgment."

Disputing the court's reliance on the exception to support its grant of summary judgment is really an attack on the sufficiency of the exception. We have held that

the exception of the patent reservation was clear and unambiguous. Moreover, the entire argument on mineral interests was irrelevant to Bowden's title, which was limited from the beginning to the surface rights only.

Likewise, the affidavits could not create a duty over and above the undertakings of the contract, regardless of whether the affiants believed the Government's conveyance of mineral rights created a "defect" in title to surface rights; and regardless of whether those affiants would have imposed upon themselves a duty to search the public records to disclose the current state of the mineral interests. First American did not bind itself to insure anything outside the title granted to its insured, and that title had nothing to do with mineral rights. The search it conducted was for its protection; it had no duty to search the records for matters it excluded from coverage. *Horn, supra,* at 89 N.M. 711, 557 P.2d 206.

We agree with the general proposition that questions of negligence should not be decided by summary judgment. *Coca v. Arceo,* 71 N.M. 186, 376 P.2d 970 (1962). But that general rule does not apply when the alleged negligence is a failure to perform an act which one has no duty to perform. The questions of duty and a breach of it are the questions of fact affecting negligence. Here, it is a fact that First American's duty was circumscribed by the contract of the parties. And when the contract indisputably limits the duty, and appellant would attempt to extend that duty beyond the contract, there are no "disputed" material facts upon which a claim of negligence for failure to perform an extended duty could survive. Where there is no negligence under the *material* facts, summary judgment is not improper. *New Mexico State Highway Dept. v. Van Dyke,* 90 N.M. 357, 563 P.2d 1150 (1977).

The judgment is affirmed.

LOPEZ and DONNELLY, JJ., concur.