Mendel ROSENBERG, et al.,
Plaintiffs–Respondents,

v.

MISSOURI TITLE GUARANTY COMPANY, et al., Defendants–Appellants.

No. 54411.

Missouri Court of Appeals,
Eastern District,
Division Three.

Dec. 20, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 24, 1989.

Application to Transfer Denied
March 14, 1989.

could be conveyed nor would an occupancy permit be issued for any structure therein until an approved subdivision plat had been recorded. The Display Plat Agreement also provided that no portion of the property could be conveyed until the display house was either located on a separate approved lot of record or removed from the property. In addition, the Agreement provided that unless a Record Subdivision Plat for the property was filed within one year, the owner of the land was required to remove all structures on the property. No Record Subdivision Plat was approved or filed prior to plaintiff's purchase of property. Since the filing of the Display Plat and Display Plat Agreement, an apartment complex consisting of 148 units was built on the land along with roadways, sidewalks, and utilities.

In January of 1973, Beltower defaulted on the note and Pioneer Bank and Trust Company (hereinafter Pioneer) purchased the property at the foreclosure sale. In July of 1974, Defendant Missouri Title Guaranty Company issued a commitment for title insurance at the request of Pioneer to "the purchaser or purchasers."

In December of 1975 Pioneer sold the property to plaintiffs and Defendant Title Insurance Company of Minnesota issued, through Defendant Missouri Title Guaranty Company, a policy of title insurance to plaintiffs. Neither the commitment for title insurance nor the title insurance policy itself mentioned, excepted or excluded the Display Plat Agreement, Display Plat, or the Display Plat Ordinance. Thereafter, plaintiffs took possession of the property and operated it as an apartment complex.

In March of 1981, plaintiffs sought to sell the property at which time the Display Plat and Display Plat Agreement were brought to their attention by another title insurance company. Plaintiffs contacted St. Louis County Officials who took the position that the construction and operation of the complex was in violation of the St. Louis County Plat Ordinance and could not be occupied or conveyed in its present state. Plaintiffs and St. Louis County Officials agreed to allow plaintiffs to continue

Robert C. Jones, Clayton, for defendants-appellants.

David L. Baylard, Union, for plaintiffs-respondents.

DOWD, Presiding Judge.

Defendants appeal the judgment in a contract and negligence suit for failing to list in their commitment for insurance a Display Plat and Display Plat Agreement and for vexatious refusal to pay in a court tried case. We affirm.

The evidence viewed most favorably to the judgment is as follows. In July of 1970, Elkar Investment Company owned a tract of land which it sold to Beltower Development Company. A $100,000 note was taken as consideration for the property. A deed of trust was issued as security for the note which was filed in the St. Louis County Recorder's Office.

In August of 1970, Beltower in accordance with a St. Louis County Ordinance filed in the Recorder of Deeds Office a Display Plat Agreement and a Display Plat. The Display Plat Agreement and the Display Plat were not signed or in any other way consented to or acquiesced in by the deed of trust holder.

The Display Plat Agreement provided that no part of the proposed subdivision

operating the property as an apartment complex, but they could not convey the property until a Record Subdivision Plat was approved by the Director of Planning of St. Louis County which would require substantial improvements. Plaintiffs performed the required improvements to which they incurred $84,076.24 in costs.

On March 27, 1981, plaintiffs provided defendants with a written notice of their claim based upon the failure of defendants to list as an exception in their title insurance commitment and policy the Display Plat Agreement, Display Plat and Display Plat Ordinance. Defendant Title Insurance Company of Minnesota under advice of counsel denied this claim. Following defendant's denial of this claim, plaintiffs brought an action in contract and negligence for failure to list a defect in title in their title insurance commitment and policy and for vexatious refusal to pay.

On November 20, 1981, after inspection and approval, the Record Subdivision Plat was filed and the property was subsequently sold.

After all the evidence was heard, the trial court found defendants negligent and in breach of contract. Judgment was entered in favor of plaintiffs on Count I and damage was assessed at $71,464.80 against both defendants. Judgment was also entered in favor of plaintiffs against defendant Title Insurance Company of Minnesota for vexatious refusal to pay and a reasonable attorney's fee for a total judgment under Count IV of $13,646.48. The court dismissed Counts II and III. This appeal follows.

At the outset, we note that in a court tried case, the decision will not be overturned unless there is no substantial evidence to support the judgment, the judgment is against the weight of the evidence, the judgment erroneously declares the law, or it erroneously applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976).

■ Defendants' first point on appeal is that the trial court erred by entering judgment against defendants because the deed of trust foreclosure extinguished the effectiveness of the Display Plat and the Display Plat Agreement on the property. Defendant relies on the fact that the Display Plat and the Display Plat Agreement were recorded after the date of the deed of trust and the mortgagee did not consent to, join in, or in any way acquiesce in either document. Defendant argues that the Display Plat and Display Plat Agreement, like a lien, would be extinguished upon foreclosure. We disagree.

Section 64.825, RSMo 1986, provides that counties may regulate subdivisions in unincorporated areas. This statute authorizes counties to utilize their police power in order to protect the health, safety and welfare of unincorporated areas within their jurisdiction. The Subdivision Ordinance of St. Louis County, Chapter 1005, was devised underneath § 64.825 which provided the guidelines and procedures with which developers could seek to have their proposed land development plats approved. This procedure allows the county to inspect the conditions of the developments and make decisions on whether or not those conditions are satisfactory to the interests of the county.[1]

The Display Plat and the Display Plat Agreement originate under St. Louis County Ordinance § 1005.350. Thus, they can be distinguished from liens in that they are

---

1. *"Purpose.*—The purpose of this Chapter is to control the division of land within the unincorporated area of St. Louis County in order to promote the public health, safety, and general welfare of the County by regulating the division of land in order to lessen congestion in the streets and highways; to further the orderly development and appropriate use of land; to establish accurate records of land subdivisions; to protect land title; to implement the County Plan; to secure safety from fire, and other dangers; to facilitate adequate and coordinated provision for transportation, water, sewerage, schools, parks, playgrounds, and other public requirements; to facilitate the further division of larger tracts into smaller parcels of land; to preserve natural features such as stands of trees, streams, significant rock formations, historical landmarks; and, in general, to facilitate the orderly coordinated, efficient and economic development of the unincorporated portion of St. Louis County."

Title X Chapter 1005.020 St. Louis County Ordinance (1969).

a product of the County's police power, rather than strictly a private agreement. The Display Plat and Display Plat Agreement must withstand the foreclosure because a condition, here a display house, that is determined detrimental or hazardous to the county's potential inhabitants is not relinquished from these characteristics merely because the property has been foreclosed upon. The ordinance imposed conditions and restrictions on the subject property which survived and were not extinguished by the foreclosure.

The agreement entered into by the original developer and St. Louis County provided that the developer may show the existing display units to potential buyers, but may not convey any property within the subdivision, by sale or lease, until the display homes were either moved to a different location or torn down completely. This recorded Agreement in effect rendered the display homes uninhabitable and until their change of location or removal, a cloud was placed on the title. This recorded agreement, due to its regulatory nature, was still in effect even after foreclosure. Point denied.

■ Defendants' second point on appeal states that the trial court erred in finding that the title insurance companies owed a duty to plaintiffs to list the Display Plat Agreement, the Display Plat and the St. Louis County Ordinance in the commitment for insurance. Defendants based this claim on the contention that the issuance of commitment for insurance and a subsequent insurance policy does not create abstractor's liability against a title insurance company.

While we agree that a commitment of insurance does not purport to be an abstract of title, it is for the trier of fact to determine whether the drafters of the commitment[2] owe a contractual duty to report matters that may constitute a defect in title and our review is limited to whether there is substantial evidence to support that finding. *Evinger v. McDaniel Title Co.*, 726 S.W.2d 468, 472 (Mo.App.1987).

Such a duty is evidenced in the commitment itself. Under the heading "Conditions and Stipulations," the commitment states: "Liability of the [Title Insurance Company of Minnesota] under this Commitment shall be ... for actual loss incurred in reliance hereon in undertaking in good faith ... to acquire ... the estate ... covered by this Commitment." Also, plaintiffs' expert testified that a title insurance company in its commitment "has an obligation, independent of this insurance, to make sure that his client is going to get a piece of property that is free of problems, claims [and defects]," so that the buyer can make "his own independent determination of the status of the property" in deciding whether or not to purchase it.

The cases defendants cite that refuse to impose negligence liability in title insurance cases are distinguishable from the case at bar. In *Anderson v. Title Insurance Co.*, 103 Idaho 875, 655 P.2d 82 (1982), the court failed to find any language in the insurance policy that extends any duty other than to indemnify. *Id.* 655 P.2d at 85. In *Horn v. Lawyers Title Insurance Corp.*, 89 N.M. 709, 557 P.2d 206 (1976), the cause of action was solely on the policy and the court found that the policy did not impose any duty to search the title records. *Id.* 557 P.2d at 208. Finally, in *Union Realty Co. v. Ahern*, 93 A.2d 84 (D.C.App. 1952), a disclaimer of liability was held valid. *Id.* at 86. Thus, these cases do not apply. Point denied.

■ Defendants' third point on appeal asserts that the trial court erred in ruling that the Title Insurance Company must report in its commitment St. Louis County Ordinance § 1005.350 because the Ordinance is ineffective as it conflicts with state law.

The appellate court is bound by the record before it. *Gramlich v. Travelers Insurance Co.*, 640 S.W.2d 180, 183 (Mo. App.1982). A review of the record fails to indicate that any challenge as to the validity of the Ordinance was made either in the

---

**2.** In real estate practice in Missouri, the terms "title report", "preliminary report" and "commit-   ment" all refer to the same type document.

**688**

pleadings or at trial. Such a challenge must be pled in accordance with Rule 55.08 as a "matter constituting an avoidance or affirmative defense." Rule 55.08. A defense which places defendants in a position to avoid legal responsibility must be set forth in defendant's answer. *Shaw v. Burlington Northern, Inc.*, 617 S.W.2d 455, 457 (Mo.App.1981). As none was pled nor otherwise presented, we are precluded from considering it. Point denied.

Defendants' fourth point on appeal is that the trial court erred in finding the title company negligent because the decision not to list the Display Plat and Display Plat Agreement was solidly backed by Missouri law. This contention is basically a rehash of the arguments raised in points I and II of their brief. Thus, we will summarily dismiss this point as we need not readdress these arguments. Point denied.

■ Defendants' final point on appeal is that the trial court erred in granting plaintiffs damages for vexatious refusal to pay because the Title Insurance Company of Minnesota had a legitimate reason to deny the claim and it had no opportunity to attack any claim made by St. Louis County. We disagree.

The vexatious refusal to pay judgment was entered against Defendant Title Insurance Company of Minnesota only. Vexatious refusal to pay pursuant to § 375.420, RSMo 1986, means refusal to pay without reasonable or probable cause or excuse. *Housing Authority of City of Clinton v. Baumann*, 512 S.W.2d 436, 440 (Mo.App. 1974). The test is whether the insurer's refusal was willful and without reasonable cause as the facts would have appeared to a reasonable man before trial. *Id.*

■ The existence of a litigable legal issue does not preclude a vexatious penalty where there is evidence that the insurer's attitude was vexatious. *DeWitt v. American Family Mutual Insurance Co.*, 667 S.W.2d 700, 710 (Mo. banc 1984). "Direct and specific evidence to show vexatious refusal is not required, the jury may find vexatious delay upon a general survey and a consideration of the whole testimony and all the facts and circumstances in connection with the case." *Id.*

Defendant Title Insurance Company of Minnesota argues that since their decision to deny payment was based on Missouri law, it had a right to refuse payment and litigate the claims made by St. Louis County. In reviewing the record, however, considering the evidence most favorable to the verdict and disregarding all contrary evidence, we find that while defendant construed the law favorably to its interest on issues that have never been decided before in a Missouri court, they failed to pursue the validity of their position. In doing so, it immediately subjected plaintiffs to potential prosecution and forced them to expend a considerable amount of money in order to avoid such prosecution. Such careless disregard towards the interests of defendant's insureds substantiates a finding of a vexatious attitude on the part of defendant. Here, we defer to the trial court's assessment of the evidence and only look to see if there is sufficient evidence to support that finding. As we have found such evidence, this point is denied.

Judgment is affirmed.

PUDLOWSKI, C.J., and SIMON, J., concur.